LOUIS A. KARASIK (State Bar No. 100672)
RACHEL M. CAPOCCIA (State Bar No. 187160)
CASONDRA K. RUGA (State Bar No. 237597)
**ALSTON + BIRD LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
lou.karasik@alston.com
rachel.capoccia@alston.com
casondra.ruga@alston.com

Attorneys for Defendant
TWENTIETH CENTURY FOX
FILM CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAGDASARIAN PRODUCTIONS, LLC, a California limited liability company, and JANICE KARMAN, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation,<br><br>    Designation. | Case No.: CV102991JHN (JCGx)<br><br>**DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S REPLY IN SUPPORT OF MOTION TO ORDER ALL DISPUTES TO REFERENCE UNDER CAL. CODE CIV. PROC. § 638 AND TO STAY THIS ACTION**<br><br>Date: August 9, 2010<br>Time: 2:00 p.m.<br>Ctrm: 790 - Roybal<br><br>    Honorable Jacqueline H. Nguyen |

1

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................1

II.    PLAINTIFFS OFFER NO BASIS FOR THIS COURT TO DISREGARD
       THE   NINTH   CIRCUIT   TEST   APPLIED   IN   *GRAHAM*   FOR
       ENFORCEMENT OF THE FORUM SELECTION CLAUSE ........................5

       A.    The   Attempt   to   Cast   Aside   Ninth   Circuit   Authority   For
             Enforcement of Forum Selection Clauses Must Fail ................................5

       B.    Plaintiffs'   Attempt   to   Cast   Aside   Ninth   Circuit   Authority
             Enforcing 638 Reference Agreements is Also Meritless ........................9

       C.    Plaintiffs Rely on Second Circuit Authority Rejected by *Graham*
             and Inconsistent with Ninth Circuit Authority........................................11

       D.    Plaintiffs'   Admission   that   the   Contract   Claim   Is   Subject   to
             Reference Only Further Supports Fox's Motion....................................13

III.   PLAINTIFFS' OPPOSITION DEMONSTRATES THAT CONTRACT
       INTERPRETATION IS AT THE HEART OF EACH CLAIM ......................14

IV.    THIS   COURT   HAS   JURISDICTION   TO   ENFORCE   A   638
       REFERENCE ........................................................................18

       A.    No Disputes Will Be Decided by a "State Court Referee" ....................18

       B.    A 638 Reference Need Not Originate From the State Court..................18

       C.    Exclusive Federal Jurisdiction of Copyright Claims Does Not Bar
             A 638 Reference ..................................................................................20

V.     THIS COURT HAS AMPLE AUTHORITY TO STAY THE ACTION
       PENDING COMPLETION OF THE REFERENCE........................................23

VI.    CONCLUSION .............................................................................24

DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S REPLY IN SUPPORT OF  MOTION TO ORDER ALL
DISPUTES TO REFERENCE UNDER CAL. CODE CIV. PROC. § 638 AND TO STAY THIS ACTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Brayton Purcell LLP v. Recordon & Recordon,*
    487 F.Supp.2d 1124 (N.D. Cal., 2007) .......................................................21

*Broadcom Corp. v. Qualcomm, Inc.,*
    2005 WL 5925584 (C.D. Cal., Oct. 19, 2005).............................................6

*Centaur Corp. v. On Semiconductor Components Industries, LLC,*
    2010 WL 444715 (N.D. Cal, Feb. 2, 2010) .................................................5

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)............................................................................. 24-25

*Corcovado Music Corp. v. Hollis Music, Inc.,*
    981 F.2d 679 (2nd Cir. 1993)............................................................... 11-12

*Coregis Ins. Co. v. Am. Health Found., Inc.,*
    241 F.3d 123 (2nd Cir. 2001)............................................................... 12-13

*Day Mgmt. Corp. v. Mobex Commc'ns, Inc.,*
    2004 WL 906366 (D. Or., Apr. 28, 2004) ................................... Passim

*E. & J. Gallo Winery v. Andina Licores S.A.,*
    446 F.3d 984 (9th Cir. 2006) ......................................................................5

*Frigate Ltd v. Damia,*
    2007 WL 127996 (N.D. Cal., Jan. 12, 2007) .........................................14

*Google, Inc. v. Affinity Engines, Inc.,*
    2005 WL 2007888 (N.D. Cal., Aug. 12, 2005) .....................................24

*Graham Technology Solution, Inc. v. Thinking Pictures, Inc.,*
    949 F.Supp. 1427 (N.D. Cal. 1997) ............................................... Passim

*Grigson v. Creative Artists Agency,*
    210 F.3d 524 (5th Circ. 2000)..........................................................10, 19

*Heath Robotics, LLC v. Bennet,*
    2009 WL 1708067 (E.D. Pa., June 16, 2009) .......................................13

*Kirby Morgan Dive Systems v. Hydrospace Ltd.,*
    2010 WL 234791 (C.D. Cal., Jan. 13, 2010) .........................................21

*Leyva v. Certified Grocers of California, Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ....................................................................24

ii

# TABLE OF AUTHORITIES

**Page**

*Lorber Industries of California, v. Los Angeles Printworkers, Corp.*,
    803 F.2d 523 (9th Cir. 1986) ................................................................21

*Lumascape USA, Inc. v. Vertex Lighting, Inc.*,
    2006 WL 825411 (N.D. Cal., Mar. 29, 2006)............................... Passim

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)..............................................................................5, 9, 14

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) ........................................................ Passim

*Modius, Inc. v. Psinaptic, Inc.*,
    2006 WL 1156390 (N.D. Cal., May 6, 2006)................................6, 13

*Multimin USA, Inc. v. Walco International, Inc. et. al.*,
    2006 WL 1046964 (E.D. Cal., April 11, 2006) ........................... 6-7, 13

*Newman v. Lifeline Systems, Co.*,
    2009 WL 1993345 (D. Ariz., July 7, 2009) ..............................................6

*Omron Healthcare, Inc. v. Maclaren Exports Ltd.*,
    28 F.3d 600 (7th Cir. 1994) ......................................................... Passim

*Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*,
    725 F.2d 537 (9th Cir. 1984) ...............................................................23

*Packeteer, Inc. v. Valencia Systems, Inc.*,
    2007 WL 707501 (N.D. Cal., Mar. 6, 2007)........................................21

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007).......................................................... Passim

*Quarles v. Twentieth Century Fox Film Corp.*,
    No. CV 05-8843 (C.D. Cal. May 5, 2006)..................................... Passim

*Remington v. Mathson*,
    2010 WL 1233803 (N.D. Cal., Mar. 26, 2010)....................................24

*Williams S. Gray & Co. v. Western Borax Co.*,
    99 F.2d 239 (9th Cir. 1938) ........................................................ Passim

**CALIFORNIA CASES**

*Housing Group v. United Nat. Ins. Co.*,
    90 Cal. App. 4th 1106 (2001) ...............................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

*Jovine v. FHP, Inc.*,
   64 Cal.App.4th 1506 (1998) ................................................................................20

**FEDERAL STATUTES**

17 U.S.C. Sec. 101: ..............................................................................................17

DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S REPLY IN SUPPORT OF  MOTION TO ORDER ALL
DISPUTES TO REFERENCE UNDER CAL. CODE CIV. PROC. § 638 AND TO STAY THIS ACTION

1    **I.    INTRODUCTION**

2          Fox's motion to enforce the non-jury reference pursuant to Cal. Code Civ.

3    Proc. Section 638 ("638 Reference") in the forum selection clause of the parties'

4    Agreement raises two principal questions: (1) under the Ninth Circuit test, does a

5    dispute arise out of a contract for purposes of enforcing a forum selection clause

6    where contract interpretation is at the heart of the controversy; and (2) do Plaintiffs'

7    claims involve such contract interpretation disputes?    Because Plaintiffs'

8    "Memorandum of Law" in opposition to Fox's motion ("Opp.") confirms that the

9    answer to both questions is yes, Fox's motion should be granted.

10         As to the first question, Plaintiffs do not dispute the Ninth Circuit has laid

11   down the rule for enforcement of forum selection clauses that a claim arises out of a

12   contract if contract interpretation is necessary to resolve the controversy.    Instead,

13   Plaintiffs take issue with the law, asserting that this rule and each and every case that

14   has applied it to a 638 Reference is "wrongly decided," "mistaken," "irrelevant" or

15   "erroneous."   (Opp. 3, 15, 20. 21.)   In order for Plaintiffs to prevail, all of the

16   applicable jurisprudence must be declared "wrong" or "irrelevant" and this Court

17   would have to disregard *each* of the following authorities:

18         1.   Plaintiffs admit that *Graham Technology Solution, Inc. v. Thinking*

19   *Pictures, Inc*., 949 F.Supp. 1427 (N.D. Cal. 1997) holds that a copyright dispute arises

20   out of a contract when it is necessary to interpret the contract to resolve the dispute.

21   (Opp. at 15.)  Plaintiffs ask the Court to disregard *Graham* as badly reasoned, even

22   though *Graham* applies the exact test established by the Ninth Circuit in *Manetti-*

23   *Farrow, Inc. v. Gucci America, Inc*., 858 F.2d 509 (9th Cir. 1988), that enforcement of

24   a forum selection clause "depends on whether resolution of the claims relates to

25   interpretation of the contract."  *Id.* at 514.  If *Graham* is wrong, so are at least *six*

26   subsequent cases from the Ninth Circuit that have applied *Manetti-Farrow* exactly the

27   same way. *See infra* at p. 6.

28         2.   Plaintiffs ask this Court in one short sentence to limit the Ninth

1

1   Circuit's holding in *Manetti-Farrow* to the specific forum selection clause at issue in

2   that case.  (Opp. at 15.)  This limitation is found nowhere in *Manetti-Farrow* or any of

3   the numerous subsequent decisions that have applied it.   Though *Manetti-Farrow*

4   established the rule for enforcement of forum selection clauses applicable to Fox's

5   motion, Plaintiffs declare that the case "has no relevance here."  (Opp. at 19:1-2.)

6        3.   Plaintiffs do not dispute that *Omron Healthcare, Inc. v. Maclaren*

7   *Exports Ltd.*, 28 F.3d 600 (7th Cir. 1994) also holds that a dispute arises out of a

8   contract where it is necessary to interpret the contract to resolve the controversy.

9   Plaintiffs' declare *Omron* to be "erroneously" decided because it enforced a forum

10   selection clause based on principles akin to enforcement of arbitration agreements.

11   (Opp. at 15:25-26.)   Yet *Omron* is consistent with Ninth Circuit authority and

12   Supreme Court precedent providing that "an agreement to arbitrate is actually a

13   specialized forum selection clause."  *See Manetti-Farrow*, 858 F.2d at 514, n. 4 citing

14   *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 (1974).

15        4.   Plaintiffs criticize the Ninth Circuit decision in *Williams S. Gray &*

16   *Co. v. Western Borax Co*., 99 F.2d. 239 (9th Cir. 1938), claiming it is "mistakenly"

17   decided and should be ignored by this Court because it "conflated" arbitration with a

18   Section 638 Reference.  (Opp. at 20:11-13.)  In fact, *Williams* made clear that it was

19   enforcing a 638 Reference agreed to by the parties *after* they waived an agreement to

20   arbitrate.  *Williams*, 99 F.2d at 240.  *Williams* reviewed and enforced findings made

21   by referees that were adopted by the District Court pursuant to a 638 Reference.

22   (Opp. at 19-20.) No case has ever questioned this 72-year old authority or the

23   enforceability of a 638 Reference in federal court.

24        5.   Finally, Plaintiffs' acknowledge that the late Judge Cooper, ruling in

25   *Quarles v. Twentieth Century Fox Film Corp.*, No. CV 05-8843 (C.D. Cal. May 5,

26   2006) on the *exact same reference language at issue in this case*, granted Fox's motion

27   to enforce the 638 Reference in a copyright case.  Plaintiffs respond that the decision

28   is "wrongly decided," "unpersuasive" and Judge Cooper "misunderstood

DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S REPLY IN SUPPORT OF  MOTION TO ORDER ALL
DISPUTES TO REFERENCE UNDER CAL. CODE CIV. PROC. § 638 AND TO STAY THIS ACTION

1    fundamentally" the nature of a 638 Reference. (Opp. at 3, 20, 21.)  To the contrary,
2    Judge Cooper's ruling is completely in line with all prior Ninth Circuit authority.

3         In short, Plaintiffs ask this Court to reject clear precedent in favor of
4    legal propositions Plaintiffs would prefer be the law. Unless *Graham, Manetti-*
5    *Farrow, Omron, Williams* and *Quarles* can *all* be cast aside as "wrong", "mistaken",
6    or "inapplicable" Fox's motion is well taken and should be granted.[1]

7         As to the second question, there is likewise no dispute that contract
8    interpretation is at the heart of the controversy.  Plaintiffs admit that their breach of
9    contract claim is a dispute arising under the Agreement. (Opp. at 22.)   Further,
10   Plaintiffs acknowledge that the lynchpin of their remaining claims for "co-
11   ownership", copyright infringement and unjust enrichment is the assertion that the
12   Agreement does not afford Fox rights to the materials allegedly created by Janice
13   Karman ("Karman").  (Opp. at 9.)  Thus, much of Plaintiffs' brief is devoted to
14   contract interpretation arguments seeking to exclude screenplays, treatments and other
15   materials allegedly created by Karman from the rights granted to Fox. This includes
16   impossible   arguments   that   a   contract   entitled   "PURCHASE/PRODUCER
17   AGREEMENT – LITERARY MATERIAL" does not reflect the purchase of Literary
18   Material (Opp. at 6), and that screenplays and treatments that contain storylines and
19   plots are not "related" to the storylines and plots they contain (Opp. at 5-6).  Each
20   argument Plaintiffs advance only serves to emphasize that the entire Complaint,
21   including  the  copyright  claims,  is  entirely  dependent  on  disputed  contract
22   interpretation. Thus, this case falls squarely within the rule of *Graham, Manetti-*
23   *Farrow, Omron* and the other cases noted above and the parties' agreement to resolve
24

25   _____
26   [1]  In lieu of all applicable Ninth Circuit authority that Plaintiffs' declare to be "wrong,"
     they invite this Court to apply the different rules applied to enforcement of forum
     selection clauses in the Second Circuit (Opp. at 14), even though *Graham* and *Omron*
27   *expressly rejected* the very rule Plaintiffs' rely upon here.  *See infra* at pp. 10-11.
     Moreover, every reported district court case from the Ninth Circuit to consider the
28   issue finds that *Omron* is consistent with *Manetti-Farrow* whereas the Second Circuit
     rule is not.

1  such disputes by a 638 Reference should be enforced.

2       Unable to favorably answer the two dispositive questions, Plaintiffs

3  invent a series of contrived jurisdictional arguments, supported by no authority

4  whatsoever, seeking to cast doubt on this Court's power to enforce a 638 Reference.

5  Contrary to Plaintiffs' misunderstanding, the 638 Reference does not involve

6  appointment of any "state court referee" (Opp. at 1-3, 16-17, 21), does not require the

7  filing of a Complaint in state court (Opp. at 17), and does not involve any adjudication

8  by the state court. (Opp. at 18.) Rather, all disputes here will be decided by a retired

9  judge, with the resulting Statement of Decision entered by this Court and reviewable

10 by the Ninth Circuit, just like the disputes that were ordered to 638 Reference in

11 *Williams* and *Quarles*. Plaintiffs' assertion that this Court's exclusive jurisdiction to

12 decide copyright claims precludes such disputes from being decided in alternative

13 dispute resolution mechanisms such as a 638 Reference (Opp. at 16-17) is equally

14 wrong, defeated not just by Plaintiffs' own authority,[2] but also by Plaintiffs'

15 admission that parties are free to have copyright and all other federal claims resolved

16 by binding arbitration. (Opp. at 20.) If, as Plaintiffs concede, an arbitrator can make a

17 binding decision on a copyright dispute, with the parties having no right of appeal, the

18 same dispute can plainly be decided by a retired judge, with the resulting decision

19 entered by this Court and appealable to the Ninth Circuit pursuant to the 638

20 Reference procedure. For these reasons, Plaintiffs can find no case that has ever

21 sustained the far-fetched jurisdictional challenges raised by Plaintiffs here.

22      In the end, the question before the Court is not complicated. All courts in

23 the Ninth Circuit agree that a forum selection clause for disputes arising out of a

24 contract should be enforced with respect to claims for which contract interpretation is

25

---

26 [2] *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) (Opp. at 14) ("Looking to

27 cases involving similar contractual provisions [i.e., forum selection clauses] and claims under other laws of the United States, we see that federal courts have routinely rejected [plaintiff's] suggestion that a claim arising under a law of the United States is

28 exempt from provisions governing disputes between contracting parties." *Id*. at 388.

at the heart of the controversy. The rule applies equally to copyright claims and to a forum selection clause that contains a 638 Reference. Fox respectfully submits the motion to enforce the reference should be granted.

## II.   PLAINTIFFS OFFER NO BASIS FOR THIS COURT TO DISREGARD THE NINTH CIRCUIT TEST APPLIED IN *GRAHAM* FOR ENFORCEMENT OF THE FORUM SELECTION CLAUSE

### A.   The Attempt To Cast Aside Ninth Circuit Authority For Enforcement Of Forum Selection Clauses Must Fail

Plaintiffs do not dispute the validity or enforceability of the forum selection clause in the parties' Agreement. Nor do they dispute that the test for enforcement of forum selection clauses set forth by the Ninth Circuit in *Manetti-Farrow*, applied to a copyright case in *Graham*, is that a dispute arises out of a contract and is thus subject to a forum selection clause where the contract must be interpreted to resolve the controversy. Nevertheless, Plaintiffs ask this Court to apply a different standard, drawn from Second Circuit cases that rely on different reasoning expressly rejected by Ninth Circuit courts. This Court should decline Plaintiffs' invitation to ignore directly applicable authority.[3]

Plaintiffs seek to avoid application of the Ninth Circuit's decision in *Manetti-Farrow* on the grounds that the forum selection clause in that case was "broader" than the one at issue here. (Opp. at 15.) Plaintiffs argue that the clause before the Court in *Manetti-Farrow* applied to "any controversy 'regarding interpretation or fulfillment' of the contract" and that *Manetti-Farrow*'s holding

---

[3] Plaintiffs likewise do not dispute the "strong policy in favor of the enforcement of forum selection clauses" (*E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006), and the equally strong policy in favor of alternative dispute resolution (*Centaur Corp. v. On Semiconductor Components Industries, LLC*, 2010 WL 444715 at *3 (N.D. Cal, Feb. 2, 2010)), particularly with respect to contracts that are the result of an "arm's-length negotiation by sophisticated and experienced businessmen" (*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).

should be limited to "the narrower scope of the language of the forum selection clause" at issue in that case. (*Id.*) (Opp. at 15:12-16.) Plaintiffs' argument is contrary to *Manetti-Farrow* and every case that has cited it. There is no suggestion by the Ninth Circuit that its holding applies only to clauses having the same language as the one at issue in *Manetti-Farrow*. Rather, the Ninth Circuit broadly concluded that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims *relates to interpretation of the contract*" and this ruling has been applied by district courts in California to a wide spectrum of forum selection clauses. *Id.* at 514 (emphasis added). Indeed, if Plaintiffs are right on this point, all of the following cases are wrong: *Graham* (applying *Manetti-Farrow* test to forum selection clause for "disputes hereunder"*); Newman v. Lifeline Systems, Co.*, 2009 WL 1993345 at *8 (D. Ariz., July 7, 2009) (applying *Manetti-Farrow* test to forum selection clause for actions "relating to" the contract); *Lumascape USA, Inc. v. Vertex Lighting, Inc.*, 2006 WL 825411 at *1 (N.D. Cal., Mar. 29, 2006) (applying *Manetti-Farrow* test to forum selection clause for "actions brought by either party"); *Multimin USA, Inc. v. Walco International, Inc. et. al.,* 2006 WL 1046964 (E.D. Cal., Apr. 11, 2006) (applying *Manetti-Farrow* to "disputes arising under" the contract); *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 at *7 (N.D. Cal., May 6, 2006) (applying *Manetti-Farrow* test to forum selection clause for "disputes under" the contract); *Broadcom Corp. v. Qualcomm, Inc.*, 2005 WL 5925584 (C.D. Cal., Oct. 19, 2005) (applying *Manetti-Farrow* test to forum selection clause for all disputes "arising out of" or "relating to" the contract).

Plaintiffs likewise offer no basis for this Court to ignore *Graham.* Plaintiffs contend that *Graham* is a misapplication of *Manetti-Farrow* – again, Plaintiffs' argument is that the Ninth Circuit rule only applies to a forum selection clause that expressly states it applies to disputes involving contract interpretation. (Opp. at 15.) To the contrary, *Graham* (and the many other cases that have followed *Manetti-Farrow)* follows the Ninth Circuit rule exactly. *Graham* noted that the

6

1   "analytical approach" of *Manetti-Farrow* is that a forum selection clause applies

2   where resolution of the claims "relates to the interpretation of the contract." *Graham*,

3   949 F.Supp. at 1432.  *Graham* applied this rule only after carefully considering and

4   rejecting contrary tests for enforcement of forum selection clauses advanced by the

5   Second Circuit (relied upon by Plaintiffs here – *see infra* at pp. 10-12).  In *Graham*,

6   the court applied *Manetti-Farrow* to find that a forum selection clause directed to

7   "disputes hereunder" (the equivalent of the "arising out of" language in the Agreement

8   here) applied to a copyright dispute because, like here, the dispute related to the

9   central conflict over the interpretation of the agreement.  *Id.* at 1433-34.

10         Notably, for over thirteen years *Graham* has never been questioned by

11   any subsequent decision.  To the contrary, *Graham's* analysis was most recently cited

12   with approval by two other District Courts in the Ninth Circuit which agree that

13   *Manetti-Farrow* requires enforcement of forum selection clauses for all disputes that

14   relate to interpretation of the contract.  *Lumascape*, 2006 WL 825411 at *10. ("'the

15   better view, and the one that is consistent with the Ninth Circuit approach adopted in

16   *Manetti-Farrow*, is the one which upholds the forum-selection clause where the

17   claims alleged in the complaint relate to the interpretation of the contract'", citing

18   *Graham*); *Multimin*, 2006 WL 1046964 at *7, ("[t]he court should uphold a forum

19   selection clause where the claims alleged in the complaint relate to the interpretation

20   of the contract", citing *Graham*.).

21         Plaintiffs also unsuccessfully attempt to distinguish *Omron*, one of the

22   cases *Graham* notes is consistent with the Ninth Circuit test (*Graham*, 949 F.Supp. at

23   1433-34), and in doing so only illustrate that the decision is also directly on point.

24   *Omron* held that the phrase "arising out of" in a forum selection clause applies to all

25   disputes requiring contract interpretation.  *Omron*, 28 F.3d at 603.  Plaintiffs argue

26   that *Omron* is distinguishable because in that case, "plaintiff's rights on which its

27   trademark infringement claims were based originated in the parties' agreement that

28   contained the subject forum selection clause." (Opp. at 15:22-24.)  Plaintiffs seek to

distinguish *Omron* on grounds rejected by the decision itself.   The trial court in *Omron* concluded that the forum selection clause should be enforced because plaintiff's rights originated in the contract, so that there would be no dispute at all if plaintiff never entered into the contract.   *Id.* at 602.   *Omron* rejected the analysis – "[b]ut for causation is an unsatisfactory understanding of language to 'disputes arising out of' an agreement."   *Id.*   The Court concluded that the case turned, not on whether plaintiff's trademark rights originated in the parties' agreement, but on the principle that "all disputes the resolution of which arguably depend on the construction of the agreement 'arise out of' that agreement," - a principle the Court found fully applicable to forum selection clauses.   *Id.*   As *Graham* and other courts point out, this is the rule followed in the Ninth Circuit.   *Graham*, 949 F.Supp. at 1433-1434 (*Omron* is "consistent with the Ninth Circuit approach in *Manetti-Farrow")*; *Lumascape*, 2006 WL 825411 at *9 (*Omron* is "on point").   The Agreement here must likewise be interpreted to adjudicate Plaintiffs' claims, thus, as in *Omron*, the dispute is subject to the forum selection clause for claims arising out of the contract.

Ultimately, unable to distinguish Fox's authority, Plaintiffs resort to declaring all precedent "wrong" or "erroneous."   Thus, Plaintiffs say *Omron* was "erroneously" decided.  (Opp. at 15:25-28.)   According to Plaintiffs, it was error for the Court to rely on "interpretive rules for arbitration provisions" in deciding whether to enforce a forum selection clause.   *Id.*   Plaintiffs do not explain why this would be error.   It is not.   The Court in *Omron* noted that the phrase "arising out of" had been found in arbitration agreements to encompass disputes which required contract interpretation, and concluded "[w]e cannot imagine why the scope of that phrase ["arise out of"] would differ for purposes of a forum-selection clause."   *Omron*, 28 F.3d at 603.   The Ninth Circuit follows the same rule:   *Manetti-Farrow* likewise found no reason to apply different interpretative rules for forum selection clauses, noting Supreme Court precedent that "an agreement to arbitrate is actually a specialized forum selection clause."   *See Manetti-Farrow*, 858 F.2d at 514, fn. 4 citing *Scherk v.*

*Alberto-Culver Co.,* 417 U.S. 506, 519 (1974). The Ninth Circuit and the Seventh Circuit are thus in accord that the phrase "arising out of" has the same meaning in a forum selection clause as it does in an arbitration agreement since the broad federal policies favoring enforcement of forum selection clauses (*see M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972)) mirrors the policies favoring enforcement of arbitration clauses. *Manetti-Farrow*, 858 F.2d at 514, fn. 4; *Omron*, 28 F.3d at 603.[4]

**B.    Plaintiffs' Attempt To Cast Aside Ninth Circuit Authority Enforcing 638 Reference Agreements Is Also Meritless**

Plaintiffs' attempt to explain away every federal case finding a 638 Reference enforceable, including three cases from courts in the Ninth Circuit, is baseless.

Plaintiffs elevate themselves above the Ninth Circuit to declare *Williams* to be "mistaken" precedent. (Opp. at 20:12.) No case, of course, has ever suggested *Williams* is mistaken, flawed or otherwise wrongly decided. But according to Plaintiffs, *Williams* is wrong because it "mistakenly conflated arbitration with a Section 638 Reference." (Opp. at 20:11-12.) Plaintiffs are the ones confused, not the Ninth Circuit. The Court in *Williams* enforced a 638 Reference that was agreed to by the parties *after* they waived an earlier agreement to arbitrate. *Williams*, 99 F.3d at 240. After plaintiff filed suit in federal court, the parties' waived their agreement to arbitrate and the parties stipulated to a 638 Reference. The referees' "findings were adopted by the court," and the court's judgment was affirmed by the Ninth Circuit. *Id.* at 240, 244. The court understood perfectly what it was doing, and neither the district court nor the Ninth Circuit found any difficulty ordering a 638 Reference. Nothing has happened in the intervening 72 years to overrule this precedent, which stands for the proposition that a 638 Reference may be enforced by the federal courts.

---

[4] The only authority Plaintiffs cite to the contrary is the Second Circuit case *Phillips* (Opp. at 15-16), whose reasoning has been expressly rejected by *Graham*, and more recently by *Lumascape*, as inconsistent with the Ninth Circuit approach. See *infra* at pp. 11-12.

9

Plaintiffs cite a recent decision by a Ninth Circuit court involving enforcement of a 638 Reference - *Day Mgmt. Corp. v. Mobex Commc'ns, Inc.*, 2004 WL 906366 at *3 (D. Or., Apr. 28, 2004) (Opp. at 20) – that further supports Fox's position.  The Court in *Day* found that defendants waived their right to enforce the 638 Reference by failing to move promptly to "enforce the dispute resolution mechanism." *Id.* at *4.  The court made clear that "if defendants had responded to the filing of plaintiff's complaint with a pleading or timely motion seeking enforcement of the dispute resolution provision [the 638 Reference], there is little doubt that the court would have enforced the parties' dispute resolution agreement." *Id.* at *3.  Fox, of course, has moved promptly to enforce the 638 Reference. [5]

Finally, Plaintiffs declare the late Judge Cooper to be both "wrong" and "unpersuasive" when she granted Fox's motion to enforce the 638 Reference *on the very same contract language before the Court here*.  (Opp. at 20-21.)  Judge Cooper, to the contrary, found that the heart of the copyright dispute before the Court in *Quarles* turned on contract interpretation, and her ruling is consistent with all of the authority cited above.  This Court later took over administration of the *Quarles* case.  The docket reflects that the Court ordered the parties to provide periodic reports on the status of the referenced proceedings.  Nothing about Judge Cooper's ruling, or this Court's subsequent administration of the 638 Reference, justifies Plaintiffs' condemnation of how the case was handled.

---

[5] The Fifth Circuit in *Grigson v. Creative Artists Agency*, 210 F.3d 524 (5th Circ. 2000) also enforced a 638 Reference, affirming the district court's decision to compel a Section 638 reference in a contract stating that disputes would be decided by a "Rent-a-Judge . . . appointed in accordance with California Code of Civil Procedure Section 638 . . . ." Contrary to Plaintiffs' misstatement that *Grigson* involved an arbitration clause (Opp. at 19), this was not an agreement to arbitrate. Rather, the parties in that case stipulated that the 638 Reference was subject to enforcement under the Federal Arbitration Act. *Id.* at 527. Nothing about that stipulation turns the 638 Reference into an arbitration.

**C.**   **Plaintiffs Rely On Second Circuit Authority Rejected By *Graham***
**And Inconsistent With Ninth Circuit Authority**

After urging this Court to ignore all decisions from courts in the Ninth Circuit contrary to their position, Plaintiffs invite the Court to follow the law in the Second Circuit, specifically, *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007). (Opp. at 14.)  In *Phillips*, the Court held that a copyright dispute does not arise under a contract if "[plaintiff] denies that the contract has any role or relevance whatever with respect to his copyright claims." *Id.* at 391.  Because the contract in *Phillips* was "only relevant as a defense in this suit, we cannot say [plaintiff's] claims originate from, and therefore "arise out of" the contract." *Id.*  In so holding, *Phillips* expressly relied on the Second Circuit's earlier decision in *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2nd Cir. 1993) that a "forum selection clause, contained in a contract that was relevant only as a defense" does not apply to a copyright claim.  *Id.* at 391; *see Corcovado*, F.2d at 682-83.

Plaintiffs' reliance on this Second Circuit authority is particularly inapposite because Plaintiffs rely on the *exact same argument* specifically rejected by *Graham* and *Lumascape* as inconsistent with the Ninth Circuit test in *Manetti-Farrow*. Exactly like Plaintiffs here, the plaintiff in *Graham* argued that "this Court should not follow the reasoning of *Manetti-Farrow*, *supra*, and *Omron*, *supra*, and points the court to a Second Circuit opinion [*Corcovado*] that considered the applicability of forum selection clauses to copyright cases."  *Graham*, *supra*, 949 F.Supp. at 1432. *Graham* noted that, under *Corcovado*, "'where a plaintiff sues for copyright infringement and asserts no rights under a contract with defendant containing a forum selection clause, the forum selection clause has no effect.'" *Id.* (quoting *Corcovado*, 981 F.2d at 682).  *Omron* expressly declined to follow *Corcovado,* stating "we find it unpersuasive."  *Omron*, 28 F.3d at 602.  After analyzing the conflicting approaches described in *Manetti-Farrow* and *Omron*, on the one hand, and the Second Circuit approach in *Corcovado,* on the other, the *Graham* court concluded that "the better

11

1   view, and the one that is consistent with the Ninth Circuit approach adopted in
2   *Manetti-Farrow*, is the one which upholds the forum selection clause where the claims
3   alleged in the complaint *relate to* the interpretation of the contract."  *Graham*, 949
4   F.Supp. at 1433 (emphasis in original).  The court in *Lumascape* reached the exact
5   same conclusion, rejecting *Corcovado* and finding *Omron* to be "on point" and
6   consistent with the Ninth Circuit's decision in *Manetti-Farrow*.

7          Moreover, this case is distinguishable from *Phillips* because here
8   Plaintiffs' Complaint expressly raises the contract interpretation issues that control the
9   controversy.  *See* Complaint, ¶15 ("[t]he Grant of Rights and the Property definition
10  under the [] Agreement do not include the right to use treatments or screenplays
11  created by" BPL or Karman).  Indeed, the contract interpretation disputes are
12  incorporated into every count of Plaintiffs' Complaint.  (Complaint, ¶¶ 55, 61, 70, 72,
13  74.)  Plaintiffs' Complaint is thus subject to the forum selection clause even under the
14  inapposite rule followed by the Second Circuit in *Phillips* and *Corcovado*, because
15  unlike those cases, here there can be no claim that "the contract has [no] role or
16  relevance whatever with respect to [plaintiff's] copyright claims."  *Phillips,* 494 F.3d
17  at 391.

18         Plaintiffs rely on another Second Circuit case, *Coregis Ins. Co. v. Am.*
19  *Health Found., Inc.*, 241 F.3d 123 (2nd Cir. 2001), to argue that "arising out of" is not
20  as broad as "relating to" (Opp. at 15) and despite the clear language to the contrary
21  *Manetti-Farrow* therefore does not apply to the language in the forum selection at
22  issue here.  In light of clear Ninth Circuit authority, the distinction is irrelevant and the
23  conclusion is wrong.  The court in *Omron* found the phrase "arising out of" in a forum
24  selection clause applies to all disputes requiring contract interpretation, an analysis
25  endorsed by numerous district courts in the Ninth Circuit.  *See supra* at p. 7.
26  Moreover, district courts in the Ninth Circuit have found the phrases "arising under,"
27  "disputes hereunder" or "disputes under" (the equivalent to "arising out of") in a
28  forum  selection  clause  to  likewise  apply  to  disputes  that  involve  contract

12

1  interpretation. *See Multimin*, 2006 WL 1046964 at *7 ("arising under"); *Graham*, 949

2  F.Supp. at 1433 ("disputes hereunder"); *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL

3  1156390 at *7 ("disputes under").  Plaintiffs' reliance on *Coregis* is curious, however,

4  because that case holds that the phrase "arising out of" is "usually interpreted as

5  indicat[ing] a causal connection." *Id.* at 128 (citations omitted).  Plaintiffs' claims here

6  "arise out of" the Agreement within the definition of that phrase is *Coregis* since the

7  entire controversy is "causally connected" to the dispute over rights granted to Fox

8  under the Agreement.[6]

9       **D.  Plaintiffs' Admission That The Contract Claim Is Subject To**

10      **Reference Only Further Supports Fox's Motion**

11           Plaintiffs admit that their multi-pronged breach of contract claim is

12  squarely within the scope of the 638 Reference.  (Opp. at 22.)  Plaintiffs insist that this

13  claim should be heard "with the remaining claims to avoid duplication and divided

14  litigation." (*Id.*)  Fox agrees.

15           Having conceded that divided litigation should be avoided, Plaintiffs seek

16  to stand the parties' Agreement on its head, arguing that even though Fox is

17  admittedly entitled to enforcement of the forum selection clause for the breach of

18  contract claim, this Court should do just the opposite, and rule that it would be

19  "unfair" or "unreasonable" for Plaintiffs to comply with their contractual agreement.

20  (Opp. at 10-11.)  None of Plaintiffs' authorities supports the argument.  (Opp. at 11.)

21  This is not a case where enforcement of the 638 Reference is "unreasonable" because

22  it would "deprive a party of its day in court" (*M/SBremen v. Zapata Off-Shore Co*, 407

23  U.S. 1, 10 (1972) (finding that it does *not* deprive a party of its day in court to enforce

24

25  ────────────────

26  [6] Plaintiffs also cite *Heath Robotics, LLC v. Bennet*, 2009 WL 1708067 (E.D. Pa.,

27  June 16, 2009) which held that a claim "arises out of" a contract where it "implicate[s]
   the contract's terms." *Id.* at *3.  *Heath* only declined to apply the forum selection

28  clause to events "that took place before the existence of the Agreement." *Id.*
   (emphasis added).

a forum selection clause for the London Court of Justice) or because it would result in "wasteful litigation" (*Frigate Ltd v. Damia*, 2007 WL 127996 at *3 (N.D. Cal., Jan. 12, 2007) (declining to enforce a forum selection clause that would result in plaintiff having to litigate simultaneously in the District Court and the Isle of Man.)  The only thing "unreasonable" here is Plaintiffs' argument that this Court should countenance divided litigation of related contract and federal claims that are all subject to a valid and enforceable forum selection clause calling for a 638 Reference.

## III.   PLAINTIFFS' OPPOSITION DEMONSTRATES THAT CONTRACT INTERPRETATION IS AT THE HEART OF EACH CLAIM

Plaintiffs concede that their breach of contract claim is "subject to the forum selection clause."  (Opp. at 22:10.)  They also concede that the remaining claims, for "co-ownership", copyright infringement and unjust enrichment, are all based on arguments that the Agreement affords Fox no rights to use various written and other materials allegedly created by Janice Karman.  (*See* Opp. at 5 (Plaintiffs claim ownership of screenplays and treatments because they are allegedly not within the definition of Property); Opp. at 9 (Plaintiffs' unjust enrichment claims are based on Fox's use of screenwriting services and graphic elements "outside the scope" of the Agreement).)    As to each of these claims, Plaintiffs offer tortured contract interpretation seeking to establish that the Agreement does not grant Fox rights to Plaintiffs' writings and other alleged contributions.  (Opp. at 5-7.)  Plaintiffs' struggles do not succeed, except to establish that the entire Complaint frames a dispute over contract interpretation that is subject to the 638 Reference.

Plaintiffs advance a series of tenuous contract arguments in an effort to erase screenplays and treatments from the broad grant of rights to Fox under the Agreement.  First, Plaintiffs argue that Fox did not acquire any rights to "Literary Materials."  (Opp. at 6.)  The Agreement specifically defines Literary Materials to include screenplays and treatments (Agreement, ST&C, ¶26(i)) - if Fox has rights to Literary Materials, the co-ownership, copyright and unjust enrichment claims based

14

on Fox's use of screenplays and treatments are finished.  Seeking to avoid this fatal flaw in their claims, Plaintiffs assert that an Agreement *entitled* "PURCHASE/PRODUCER AGREEMENT – LITERARY MATERIAL" does not reflect Fox's purchase of Literary Material.  (Opp. at 6.)  They also ask the Court to ignore that the grant of rights to Fox for all Property is "more particularly described" in the Standard Terms and Conditions for purchase of "Literary Materials," and that these terms expressly defining Literary Materials to include screenplays and treatments are expressly "made a part [of the Agreement] hereto."  (Agreement, ¶5). No authority, of course, permits Plaintiffs to simply ignore these contract terms.  But in all events, whether Fox acquired rights to Literary Materials under the Agreement **is a contract interpretation issue that frames a dispute arising out of the Agreement.**

Second, Plaintiffs contend that Fox's rights to use all "plots, themes, titles and story lines" and "any and all other elements relating to any of the foregoing, now existing or created hereafter" (Agreement, ¶1) does not give Fox rights to screenplays and treatments. (Opp. at 6.)  According to Plaintiffs, this is because "screenplays and treatments are in scope and scale beyond plots, themes, titles [or] story lines" (*Id.*) and Fox's rights to use "related elements" means that Fox only has rights to use "smaller components" of the identified elements.  (*Id.*)  According to Plaintiffs, then, Fox has full and unfettered rights to use all plots, themes, story lines and Alvin characters contained in or embodied by a screenplay or treatment created by Karman, but the screenplay and treatment is not related to the plots, themes, story lines and characters they contain.  There is nothing in the Agreement that supports this impossible parsing of rights based on invented constructions about "scope and scale" and assertions that "related" elements means "smaller components" of elements.  But in all events, **this is a contract interpretation issue that frames a dispute arising out of the Agreement**.

Third, Plaintiffs argue that screenplays and treatments are not "versions"

15

of the Property, i.e., that they are not new or different arrangements, adaptations, dramatizations or uses of Alvin characters and other materials that Fox is entitled to use without payment of further compensation.  (Opp. at 6.)  Yet the contract describes Fox's rights to use "Versions of the Property" as follows:

> "All rights granted to Fox hereunder may be exercised by Fox without the payment of any additional consideration by Fox with respect to the Property as presented to Fox and all other existing and future drafts, revisions, arrangements, adaptations, dramatizations, transactions and other versions of the Property which may heretofore have been written or which may hereafter be written by or with the sanction of BPL."

(Agreement, ST&C, ¶9 (emphasis added).)

Once again, Plaintiffs' position is that the contract language should be ignored in favor of their contradictory construction of the parties' rights.  Once again, Plaintiffs' meritless argument is **a contract interpretation issue that frames a dispute arising out of the Agreement**.

Plaintiffs argue that the Agreement's work for hire provisions do not mean that Karman's services were provided on a work for hire basis.  (Opp. at 7.)  The Agreement provides that "all results and proceeds of [Karman's] services . . . are . . . specially ordered by Fox for use as part of a motion picture and shall be considered a "**work made for hire**" for Fox, and, therefore, Fox [is deemed] the author and copyright owner thereof for all purposes throughout the universe."  (Agreement, ST&C, ¶24(a) (emphasis in original).)  Whether the parties had a "work for hire" agreement applicable to Plaintiffs' materials is necessarily a contract question (*See* 17 U.S.C. Sec. 101: "A 'work made for hire' . . . [exists] . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire").  Nevertheless, Plaintiffs declare the issue off the table because Karman was

retained to perform services "customarily rendered by producers in the motion picture industry" (Agreement, ¶ 5), which, according to Plaintiffs, "has nothing whatsoever to do with [her] writings." (Opp. at 14:23-27.) Not only does the Agreement capture all "services" rendered by Karman as a work for hire, but the question whether "customary" producer services includes writing is plainly **a contract interpretation issue that frames a dispute arising out of the Agreement**.

Finally, Plaintiffs' claim that writing services must be outside the Agreement because there is no reference to "writing steps" or "specified delivery method" and other provisions which Plaintiffs declare (without support) are "customarily found" in "producer/writer agreements," including a purported "customary representation" by Karman that she is a screenwriter bound by WGA (Writers Guild of America) rules.  (Opp. at 6.)  Plaintiffs also find it important that Fox under the Agreement has the right to commission writers to produce screenplays and treatments and that Karman has certain approval rights over such screenplays. (Opp. at 5.)  These arguments are baseless.  Fox paid Plaintiffs *millions of dollars* to acquire the rights to make movies based on Alvin materials created by Plaintiffs and there is no rule ("customary" or otherwise) requiring that there be an agreement about "writing steps" and other such matters.  Moreover, Fox's right to commission writers and Karman's alleged approval rights for written materials commissioned by Fox hardly undercuts Fox's ownership of the results and proceeds of Karman's services and the right to use, without payment of further compensation, all Alvin materials created by Karman. But once again, all of these arguments are **contract interpretation issues that frame a dispute arising out of the Agreement**.

Plaintiffs should be required to present their fanciful contract arguments seeking to re-write the Agreement – all disputes arising out of the Agreement - to the agreed upon decision maker in a 638 Reference.

## IV.     THIS COURT HAS JURISDICTION TO ENFORCE A 638 REFERENCE

All of the relevant authority cited by the parties in this case makes clear that a federal court with subject matter jurisdiction over the claims before it may enforce the parties' forum selection clause requiring a 638 Reference.  *See Williams,* 99 F.2d. 239; *Grigson*, 210 F.3d 524; and *Quarles*, No. CV 05-8843.  Seeking to avoid that result, Plaintiffs have invented purported "jurisdictional" objections to enforcement of the 638 Reference.  Plaintiffs argue that (1) a 638 Reference requires appointment of a "state court referee;" (2) a 638 Reference can only be initiated in state court; and (3) the exclusive federal jurisdiction for copyright claims precludes the Court from enforcing the 638 Reference.  (Opp. at 16-20.)  Plaintiffs' unsupported arguments hold no water.

### A.     No Disputes Will Be Decided By A "State Court Referee"

Plaintiffs repeatedly assert that it is impermissible to enforce the 638 Reference because this means copyright issues will be decided by a "state court referee."  (Opp. at 1, 2, 3, 16, 17, 21.)  Their argument is based on an erroneous premise:  Fox does not seek appointment of any "state court referee." Rather, under a 638 Reference, a *retired judge* will adjudicate the disputes and issue a Statement of Decision.  (Agreement, ST&C, ¶21(a)(ii); Cal. Code Civ. Proc. Sec. 638.)  The referee has no affiliation with the state court and no issues will be decided by any state court judge or other judicial officer.  Plaintiffs' most persistent complaint is made of whole cloth – no issue is raised that any claims will be decided by the state court or any officer of the state court.

### B.     A 638 Reference Need Not Originate From The State Court

Plaintiffs next contend that a 638 Reference is improper because an action for a reference must be commenced in California Superior Court.  (Opp. at 17.) For this proposition Plaintiffs rely upon *Housing Group v. United Nat. Ins. Co.*, 90 Cal. App. 4th 1106 (2001), which they claim states:  "[T]he circumstances allowing reference under [S]ection 638 are statutorily defined, and require an action or

1    proceeding over which the [California Superior Court] has jurisdiction." (Opp. at 18.)
2    Once again, Plaintiffs' arguments are unsupported.

3          Plaintiffs have fundamentally modified the language in *Housing Group*
4    by inserting the parenthetical "California Superior Court" into the decision.   The
5    actual quote from *Housing Group* says only that a 638 reference requires "an action or
6    proceeding over which *the court* has jurisdiction." (*Housing Group*, 90 Cal.App.4[th] at
7    1118, (emphasis added).)   Nothing in *Housing Group* suggests that the court with
8    jurisdiction over the dispute must be the California Superior Court.   Nor is there
9    anything in the reference statute to suggest this.   Indeed, there is nothing under any
10   California or federal law to suggest that only a California Superior Court has authority
11   to enforce a reference.   Both *Williams* (Ninth Circuit) and *Grigson* (Fifth Circuit), of
12   course, are directly to the contrary, as are *Quarles* and *Day*.

13         Of course, in re-writing the decision in *Housing Group*, Plaintiffs
14   completely ignore the issue actually decided.   The issue presented in *Housing Group*
15   was whether a 638 Reference can be enforced when there is no pending case between
16   the parties.   The parties in that case engaged in a private dispute resolution and sought
17   an order of the Superior Court to appoint a Section 638 referee to facilitate entry of an
18   enforceable settlement.   *Id.* at 1108.   The court determined that "'a reference by the
19   trial court involves the sending of a *pending action or proceeding*, or some issue
20   raised therein, to a referee for hearing, determination and report back to the court.'"
21   *Id.* at 1114 (emphasis added) (citations omitted).   The court held that without a lawsuit
22   over which the referring court has jurisdiction, there is no justiciable controversy and
23   the court cannot enforce a 638 Reference.   *Id.* at 1114.   There is no such issue
24   presented here – Plaintiffs have filed a lawsuit over which this Court has jurisdiction,
25   including the power to enforce the reference.

26         The other cases cited by Plaintiffs on this point similarly offer no support
27   for their "jurisdictional" objection.   *Central Valley Gen. Hosp. v. Smith* states general
28   propositions regarding reference proceedings that would be applicable to any

                                              19

reference.   162 Cal.App.4th 501, 513 (2008).   *Jovine v. FHP, Inc.*, 64 Cal.App.4th 1506 (1998), is equally unavailing as it addresses the scope of a non-consensual, court-ordered reference pursuant to Section 639, which is not at issue here.   *Id.* at 1521 (holding that a nonconsensual reference is improper when it referred matters not specifically enumerated in the statute authorizing nonconsensual references).

In short, Plaintiffs have offered no authority holding that a 638 Reference must originate from a California Superior Court, and directly applicable authority is exactly to the contrary.

### C.   Exclusive Federal Jurisdiction Of Copyright Claims Does Not Bar A 638 Reference

To Fox's knowledge, every federal case dealing with a 638 Reference has ordered or upheld the reference of disputes (except for *Day*, which declined to do so only because the defendant had waived its right to enforce the reference).   None has found any jurisdictional impediment.   Plaintiffs' jurisdictional attacks cannot be harmonized with these cases or the results of these decisions.   *See* discussion at p. 21-22, *infra*.

Plaintiffs assert that a retired judge cannot decide copyright claims pursuant to a 638 Reference because federal courts have exclusive jurisdiction over copyright claims. (Opp. at 16, 18.)   For this to be true, copyright claims would have to be immune from alternative dispute resolution agreements permitting the issues to be decided by someone other than a District Court judge.   But they are not.   Indeed, Plaintiffs make this argument in the face of their admission that copyright (and all other federal claims) can be decided in binding arbitration for which there is no right of appeal.  (Opp. at 20.)

It is black letter law that federal courts have exclusive jurisdiction over copyright cases, and nothing about Fox's motion to enforce the 638 Reference seeks either to divest the federal courts of any jurisdiction or to give jurisdiction to the state courts.   Rather, Fox seeks to enforce Plaintiffs' *contractual agreement* to have

20

disputes decided through a form of alternative dispute resolution, namely, a 638 Reference.  This hardly breaks new ground.  It is well-established that copyright claims brought in federal court may be decided through arbitration, a long recognized form of alternative dispute resolution.  *See e.g., Brayton Purcell LLP v. Recordon & Recordon*, 487 F.Supp.2d 1124, 1126 (N.D. Cal., 2007) (copyright infringement claim decided by arbitrator); *Packeteer, Inc. v. Valencia Systems, Inc.*, 2007 WL 707501 at *3-4 (N.D. Cal., Mar. 6, 2007) (rejecting plaintiff's argument that arbitrator does not have jurisdiction to decide claim for copyright infringement); *Lorber Industries of California, v. Los Angeles Printworkers, Corp.*, 803 F.2d 523, 525 (9th Cir. 1986) (acknowledging that copyright infringement claims are subject to arbitration); *Kirby Morgan Dive Systems v. Hydrospace Ltd.*, 2010 WL 234791 at *3 (C.D. Cal., Jan. 13, 2010) (confirming arbitration award involving claims for trademark and copyright infringement).

In fact, the answer to Plaintiffs' "exclusive jurisdiction" objection to enforcement of alternative dispute resolution for copyright claims is found in a case upon which Plaintiffs most heavily rely:  the Second Circuit decision in *Phillips*. There, like here, plaintiff argued that "[b]ecause his copyright infringement claims arise under the Copyright Act, they cannot arise out of the contract." *Phillips*, 494 F.3d at 387.  The court dispensed with the argument:  "Looking to cases involving similar contractual provisions [i.e., forum selection clauses] and claims under other laws of the United States, we see that federal courts have routinely rejected Phillips' suggestion that a claim arising under a law of the United States is exempt from provisions governing disputes between contracting parties." *Id*.  Further, the Court emphasized that plaintiff is not the "master to decide the meaning of a disputed contractual provision, which is, in effect, what [Phillips] suggests in asking us to hold that his claims do not arise our of the [contract] based solely on the laws he cites in his complaint." *Id*.  Precisely the same is true here.

Reference proceedings under Section 638 are, like arbitration, a form of

21

alternative dispute resolution.  As Plaintiffs point out, there are differences between arbitration provisions governed by the FAA and references governed by Section 638. (Opp. at 19-20.)  But the differences between arbitration and 638 Reference do not render reference unlawful.  If anything, they support enforcement of the 638 Reference. Unlike binding arbitrations, decisions of a referee pursuant to a 638 Reference are entered as the judgment of the trial court, and are fully reviewable by the relevant appellate court—here the Ninth Circuit.  Moreover, a 638 referee must apply the relevant law when rendering its decision; that is not required by arbitrators under the FAA.  *See Day*, 2004 WL 906366 at *3.  As a result, the reference procedure agreed to by the parties in this matter provides Plaintiffs *greater* procedural and substantive protection than they would have had if the contract provision had specified arbitration.  Plaintiffs have cited no authority explaining why a reviewable decision by a retired judge serving as a referee for a 638 Reference is disfavored (much less impermissible), when a non-reviewable binding decision by an arbitrator— who need not be a former judge, and who need not even follow the law in reaching his or her decision—is completely permissible.

The authority Plaintiffs cite on this point only further supports enforcement of the 638 Reference here.  Plaintiffs point to *Day*, but as noted in the case, the court declined to enforce a 638 Reference, not because it was impermissible, not because it wasn't filed in state court, not because federal claims can't be decided by a retired judge in a 638 Reference – but because defendants waived their right to enforce the reference by failing to move promptly to the "enforce the dispute resolution mechanism."  *Id.* at *4.  The court made clear that "if defendants had responded to the filing of plaintiff's complaint with a pleading or timely motion seeking enforcement of the dispute resolution provision [the 638 Reference], there is little doubt that the court would have enforced the parties' dispute resolution agreement."  *Id.* at *3.

Plaintiffs' reliance on *Pacemaker Diagnostic Clinic of America, Inc. v.*

22

1  *Instromedix, Inc.*, 725 F.2d 537 (9th Cir. 1984) is misplaced.  (Opp. at 21.)  The

2  parties in that case agreed to have a magistrate judge preside over their patent

3  infringement trial, pursuant to the Federal Magistrate Act ("FMA").  On appeal, a

4  Ninth Circuit panel raised sua sponte the constitutionality of the FMA, and the court

5  sitting en banc upheld the FMA.  The question in *Pacemaker* was whether a *judicial*

6  *officer* (a magistrate judge) can decide federal claims with the consent of the parties

7  (the answer was yes).  Nothing in *Pacemaker* casts doubt on the parties' right to have

8  federal claims decided in alternative dispute resolution mechanisms such as a 638

9  Reference.  As noted above, numerous cases both before and since *Pacemaker* have

10  confirmed that federal copyright cases are fully susceptible to resolution through

11  alternative dispute resolution by arbitrators and retired judges. [7]

12          In summary, there is no jurisdictional impediment to this Court's

13  enforcement of the 638 Reference.

14  **V.      THIS COURT HAS AMPLE AUTHORITY TO STAY THE ACTION**

15  **PENDING COMPLETION OF THE REFERENCE**

16          Plaintiffs do not (because they cannot) dispute that this Court has broad

17  discretion to stay cases when it is "efficient for its own docket and the fairest course

18  for the parties." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir.

19  1979).  Stay is certainly appropriate if the Court grants Fox's motion to enforce the

20  638 Reference, since the entire dispute will be in the hands of a referee.  Plaintiffs do

21  not argue otherwise.

22          Nevertheless, at the very end of their paper, Plaintiffs mount a confused

23  constitutional argument about whether the District Court may stay federal copyright

24

25  [7]Even if jurisdictional impediments existed (though they plainly do not), *Quarles*
26  supports reference of just contract interpretation disputes, as Fox requested in that
   case.  Here, reference of all contract interpretation issues and all state law claims
27  (unjust enrichment and breach of contract) would raise none of the jurisdictional
   arguments Plaintiffs raise.  Of course, Fox seeks reference of all disputes, including
28  the federal claims, since every claim in the Complaint requires contract interpretation,
   is subject to the 638 Reference and there are no jurisdictional impediments.

1  claims pending decision by the referee on breach of contract claims.  (Opp. at 23.)

2  Plaintiffs assert that this Court is constitutionally barred from staying the copyright

3  claims in that circumstance.  (*Id.*)  Of course, the hypothetical Plaintiffs' advance has

4  no foundation:  as discussed *ante*, all claims, including the copyright claims, should be

5  ordered to reference, and a stay is plainly appropriate in that situation.  But in any

6  event, the problem with Plaintiffs' argument is that the legal theory underlying each of

7  the cases they cite, federal court abstention pursuant to *Colorado River Water*

8  *Conservation Dist. v. United States*, 424 U.S. 800, 919 (1976), does not remotely

9  apply here. In order for *Colorado River* abstention issues to arise, there must be a

10  parallel or duplicative litigation pending in *both state and federal court*. *See, e.g.*,

11  *Remington v. Mathson*, 2010 WL 1233803 (N.D. Cal., Mar. 26, 2010) (cited in Opp.

12  at 24); *Google, Inc. v. Affinity Engines, Inc.*, 2005 WL 2007888 (N.D. Cal., Aug. 12,

13  2005) ("[w]here the Court has exclusive federal jurisdiction, it cannot stay a

14  proceeding *pending the resolution of a state court action,*" emphasis added (cited in

15  Opp. at 24).  Here, no state court case exists, and submission of some or all of the

16  pending claims to a 638 Reference will not create a state court case or raise any of the

17  policy considerations underlying *Colorado River* abstention. There is no impediment,

18  let alone any constitutional impediment, to this Court staying the action pending

19  completion of the 638 Reference.

20  **VI.    CONCLUSION**

21         For the foregoing reasons, Fox respectfully requests that the Court order

22  Plaintiffs to pursue their claims in accordance with the contractually agreed-upon 638

23  Reference proceeding and stay this action pending the conclusion of the reference

24  proceedings.

DATED:  July 30, 2010          **ALSTON + BIRD LLP**

25                                          /s/  Louis A. Karasik

26                                                        Louis A. Karasik
                                            Attorneys for Defendant
27                                          TWENTIETH CENTURY FOX FILM
                                            CORPORATION

28