1  LOUIS A. KARASIK (State Bar No. 100672)
   RACHEL M. CAPOCCIA (State Bar No. 187160)
2  CASONDRA K. RUGA (State Bar No. 237597)
   **ALSTON & BIRD LLP**
3  333 South Hope Street
   Sixteenth Floor
4  Los Angeles, California 90071
   Telephone:  (213) 576-1000
5  Facsimile:  (213) 576-1100
   lou.karasik@alston.com
6  rachel.capoccia@alston.com
   casondra.ruga@alston.com
7
   Attorneys for Defendant
8  TWENTIETH CENTURY FOX FILM CORPORATION

9               UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
                     WESTERN DIVISION
11

| | |
|---|---|
| 12  BAGDASARIAN PRODUCTIONS, LLC, a California limited liability company, and JANICE KARMAN, an individual, | Case No. CV 10-02991 MWF (JCGx) |
| 13 | Referred under Cal. Code Civ. Proc. Section 638 to: |
| 14               Plaintiffs, | |
| | Hon. Carl J. West (Ret.) |
| 15        v. | JAMS Reference No. 1220044628 |
| 16  TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation, | **CONFIDENTIAL FILED UNDER SEAL** |
| 17               Defendant. | |
| 18 | **DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** |
| 19 | |
| 20 | |
| 21 | [Filed concurrently with Notice of Motion; Declarations of Louis A. Karasik and Casondra K. Ruga in support of Motion for Attorneys' Fees and Costs; Notice of Application to Tax Costs and Proposed Bill of Costs; Declaration of Casondra K. Ruga in support of Application to Tax Costs; and [Proposed] Order Granting Fox's Motion for Attorneys' Fees and Costs and Fox's Application to Tax Costs] |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | Filing Date:          4/21/2010 |
| 28 | |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ I

II.  FOX IS THE PREVAILING PARTY ON ALL COPYRIGHT-
     RELATED CLAIMS ....................................................................................... 4

     A.   Fox Rejects Plaintiffs' Threats of Copyright Infringement Claims .......... 4

     B.   Fox Enforces the 638 Reference to Compel Adjudication of the
          Copyright-related Claims in this Reference Proceeding .......................... 5

     C.   The Referee Dismisses Plaintiffs' Copyright-Related Claims Based
          on the Express Terms of the Agreement ................................................. 6

III. FOX IS ENTITLED TO RECOVER ITS REASONABLE FEES IN
     DEFENSE OF THE COPYRIGHT-RELATED CLAIMS ................................ 7

     A.   The Copyright Act Authorizes Attorneys' Fees When A Successful
          Defense Against Claims Furthers The Purposes of the Act ..................... 7

     B.   Fox's Successful Defense of this Lawsuit Warrants a Fee Award .......... 9

          1.   Fox's Successful Defense of the Copyright-related Claims
               Vindicated the Purposes of the Copyright Act ............................. 9

          2.   The Referee's Dismissal of Plaintiffs' Copyright-related
               Claims Reflects That Those Claims Were Objectively
               Unreasonable. ............................................................................ 10

     C.   Plaintiffs' Copyright-related Claims Were Not Just Objectively
          Unreasonable, but Contrived in Bad Faith .............................................. 12

IV.  THE RECORD REFLECTS BAD FAITH, INCLUDING DENIAL OF
     FOX'S REQUEST FOR ADMISSIONS, THAT PERMEATES EVERY
     CLAIM AND SUPPORTS AN AWARD OF ADDITIONAL FEES .............. 16

i

V.   FOX IS ENTITLED TO NO LESS THAN $837,006 IN FEES ON THE
COPYRIGHT-RELATED CLAIMS AND $850,000 IN FEES FOR THE
OTHER BASELESS CLAIMS ........................................................................ 20

    A.   Fox Requests $837,006 For its Successful Defense of the
Copyright-Related Claims Plus the Fees Incurred to Pursue this
Motion ...................................................................................................... 20

    B.   Fox Requests $850,000 For Its Successful Defense of the
Remaining Baseless Claims .................................................................. 23

    C.   Fox is Entitled to Recover Taxable Costs of $89,418.01 and an
Additional $7,469.72 in Non-Taxable Costs ("Full Costs") .................. 23

VI.   CONCLUSION .............................................................................................. 24

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*,
5
    673 F.3d 1267 (9th Cir. 2012)...................................................................... 6, 10

6

*Berry v. Hawaiian Exp. Service, Inc.*,
    2006 WL 4102120 (D. Haw. Oct. 21, 2006) ......................................................... 2

7

8

*Davis v. City and Council of San Francisco*,
    976 F.2d 1536 ......................................................................................................... 3

9

10

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir.1996) ........................................................................ 1, 8, 9, 11

11

*Fischer v. SJB-P.D. Inc.*,
12
    214 F.3d 1115 (9th Cir. 2000) ............................................................................... 3

13

*Fogerty v. Fantasy*,
14
    510 U.S. 517 (1994) ...................................................................................... 1, 8, 9

15

*Goldberg v. Cameron*,
16
    2011 WL 3515899 (N.D. Cal. Aug. 11, 2011) ................................................... 11

17

*Historical Research v. Cabral*,
    80 F.3d 377 (9th Cir.1996) ..................................................................................... 8

18

19

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ................................................................................. 3

20

*Malijack Prods., Inc. v. GoodTimes Home Video Corp.*,
21
    81 F.3d 881 (9th Cir. 1996) .............................................................................. 1, 12

22

*Marchand v. Mercy Med. Ctr.*,
23
    22 F.3d 933 (9th Cir. 1994) ................................................................................... 3

24

*Mattel, Inc. v. MGA Entertainment, Inc.*,
25
    705 F.3d 1108 (9th Cir. 2013) ........................................................................... 7, 8

26

*Mattel, Inc. v. Walking Mt. Prods.*,
27
    2004 WL 1454100 (C.D. Cal. June 21, 2004) ..................................................... 2

28

*Perfect 10, Inc. v. CCBill LLC,*
    488 F.3d 1102 (9th Cir. 2007) ............................................................... 8

*Porto v. Guirgis,*
    659 F.Supp.2d 597 (S.D.N.Y. 2009) ...................................................... 2

*Scott v. Meyer,*
    2010 WL 2569286 (C.D. Cal. June 21, 2010) ........................................ 2

*United States v. 12,248 U.S. Currency,*
    957 F.2d 1513 (9th Cir.1991) ................................................................. 3

*Zobmondo Entm't LLC v. Falls Media*
    LLC, 2009 WL 202034 (C.D. Cal. Jan. 23, 2009) ........................... 8, 10

**RULES**

FRCP 37(c)(2) ............................................................................................. 3

**STATUTES**

17 U.S.C. §505 ........................................................................................ 1, 7

Cal. Code Civ. Proc. §1281 ...................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS

# I.    <u>INTRODUCTION</u>

The Copyright Act ("the Act") authorizes attorneys' fees awards to prevailing parties whose success in copyright claims "encourage[s] the production of original literary, artistic, and musical expression for the good of the public" and "enhance[s] predictability and certainty of copyright ownership." *Fogerty v. Fantasy*, 510 U.S. 517, 537-538 (1994) ("*Fogerty I*") (analyzing 17 U.S.C. §505).    Here, plaintiffs threatened Twentieth Century Fox Film Corporation ("Fox") with copyright infringement claims if Fox released *Alvin and the Chipmunks: The Squeakquel* ("*The Squeakquel*").  Fox rejected these threats, and when this lawsuit followed, Fox prevailed on the copyright claims, creating certainty about its copyright interests and clearing the path for future films.

Under well-settled authority, Fox's "total success in defending against [Plaintiffs'] copyright claims" warrants a fee award.  *Malijack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).  That principle encompasses Plaintiff Janice Karman's ("Karman's") claims for copyright infringement and declaration of co-ownership/accounting and Karman's and Bagdasarian Productions, LLC's ("BPL's") claims for unjust enrichment also predicated on Fox's use of Karman's materials (collectively, "Copyright-related Claims").  The Referee found "no question" that these four claims are defeated by the parties' Agreement,[1] that Plaintiffs' claims "would defeat the purpose and intent of the Agreement" and that the claims are "inconsistent with [and] in direct contravention of the grant of rights contained in the parties' Agreement." (Declaration of Louis A. Karasik ("Karasik Decl."), Ex. 8, Ruling on Motion to Dismiss ("MTD Order") at 2-3.)  These findings by themselves warrant an award to Fox of fees under the Act. *Malijack Prods., Inc.,* 81 F.3d at 890; *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir.1996) ("*Fogerty II*").

---

[1] "Agreement" refers to the Purchase/Producer Agreement – Literary Material "Alvin and Chipmunks" dated March 26, 2004 entered into between BPL and Fox.

Fox's complete success defending Plaintiffs' copyright claims is sufficient to support the attorneys' fees award, but the bad faith underlying the assertion of these claims adds yet another basis under the Act for the award. *Mattel, Inc. v. Walking Mt. Prods.*, 2004 WL 1454100, *2 (C.D. Cal. June 21, 2004); *Scott v. Meyer*, 2010 WL 2569286 (C.D. Cal. June 21, 2010). As revealed by documents produced by Plaintiffs and their agent Steve Waterman ("Waterman"), Ross Bagdasarian, Jr. ("Bagdasarian") pursued the copyright claims and a host of other claims for additional compensation because he "could not live with [BPL's] present deal." (Declaration of Casondra K. Ruga ("Ruga Decl."), Ex. 7.) Dissatisfied with the ███ he received from the first *Alvin* film, Bagdasarian concluded that "a lawsuit from us where they are using services (of Chipette design and writing) they don't own will ultimately bring [Fox] around" to renegotiating their deal. (Ruga Decl., ¶12, Ex. 11.) Plaintiffs' tactic was to demand throughout 2008 and 2009 that materials provided by Karman be included in the picture, while planning a copyright suit seeking 50% of the film's profits for Fox's use of those very same materials. (*Id.*, ¶¶13-16, Exs. 11-16.) Plaintiffs waited until the film was finished to advance their copyright infringement threats and asserted their Copyright-related Claims even though they are contradicted by the plain language of the parties' Agreement.

Courts considering fee motions rarely have such direct and clear evidence of improper motive. Moreover, a fee award is particularly appropriate because Plaintiffs went forward even though "counsel was warned, before any action had been filed, that there was no colorable copyright infringement claim," which courts hold is a strong indication of improper motive that further supports a fee award under the Act. *Porto v. Guirgis*, 659 F.Supp.2d 597, 617 (S.D.N.Y. 2009); *Berry v. Hawaiian Exp. Service, Inc.*, 2006 WL 4102120 at *9-10 (D. Haw. Oct. 21, 2006).

Finally, Fox seeks a fee award to compensate for the expenses it incurred to defend against Plaintiffs' bad faith pursuit of myriad other claims that lacked factual or legal support. Absent a fee award on these claims, Plaintiffs will have

accomplished their objective of punishing Fox with litigation for refusing to renegotiate the Agreement.  The Referee has both statutory and inherent authority to award Fox attorneys' fees for its successful defense of these other baseless claims.  Rule 37(c)(2) of the Federal Rules of Civil Procedure mandates an award of reasonable expenses, including attorneys' fees, incurred to prove the matter wrongfully denied by the party responding to Requests for Admission ("RFAs").  *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 937 (9th Cir. 1994) (awarding sanctions pursuant to FRCP 37(c)(2)).  Fox incurred substantial fees to prove the merits of matters that Plaintiffs denied without justification in responses to Fox's RFAs. (Karasik Decl., ¶¶26-45.)  The Referee also has inherent authority to award attorneys' fees to sanction bad faith pursuit of claims.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).  That authority should be exercised here because Plaintiffs rebuffed Fox's repeated efforts to meet and confer over the plain deficiencies of their claims, including admissions in Plaintiffs' own documents that contradict their theories, forcing Fox to engage in expensive discovery and pursue dispositive motions that should not have been necessary.  Indeed, the Referee ultimately dismissed most of Plaintiffs' claims for factual and legal defects that Fox explained to Plaintiffs' counsel early and often.

The accompanying Karasik Declaration specifies the amounts incurred for fact investigation, legal analysis, briefing, hearings and other activity in defense of the Copyright-related Claims, totaling approximately $837,006.[2]   (Karasik Decl., ¶¶8, 15(a)-(e), 16-23, Exs. 1-4.)  Fox also requests $135,000 for the prosecution of this fee

---

[2] The Karasik Declaration includes an exhibit that reproduces the relevant time-entries directly from the billing records. (Karasik Decl., Ex. 1.)  The copyright-related fees were about $375,000 for activities outside the 638 Reference issues, and about $475,000 for enforcement of the 638 Reference.  Fox's detailed description of the activity which is the basis for this fee motion is more than sufficient under the Federal Rules to support the award.  *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *United States v. 12,248 U.S. Currency,* 957 F.2d 1513, 1521 (9th Cir.1991); *Davis v. City and Council of San Francisco*, 976 F.2d 1536, 1542.

3

motion.  (Karasik Decl., ¶78.)  On the other claims, Fox asks the Referee to also award fees of $850,000, representing just a fraction – ████████ - of the fees incurred by Fox in its defense of the other groundless claims, and less than the fees incurred by Fox solely as a result of Plaintiffs' denial of the RFAs.  (Karasik Decl., ¶¶24-25, 28, 32, 36, 39, 42, 45, Ex. 13.)  Plaintiffs cannot be heard to complain if they are now held accountable for their actions.

## II.   FOX IS THE PREVAILING PARTY ON ALL COPYRIGHT-RELATED CLAIMS

### A.   Fox Rejects Plaintiffs' Threats of Copyright Infringement Claims

Unbeknownst to Fox, Bagdasarian planned since early 2009 to sue Fox for copyright infringement for using materials that Karman submitted during development of *The Squeakquel* if Fox would not agree to his demands for additional compensation.  (Ruga Decl., ¶¶8-12, Exs. 7-11.)  After months of discussions from January to May 2009 between Fox's Steve Plum and Waterman resulted in no agreement to pay Plaintiffs' additional compensation, Plaintiffs' counsel Larry Shire ("Shire") initiated discussions with Plum in the spring of 2009.  (*Id*., ¶17, Ex. 17.)  When those discussions did not result in a deal to Bagdasarian's satisfaction, Plaintiffs escalated their demands in October 2009 when, with the movie now substantially completed, Shire sent a demand letter advising that Fox's use in *The Squeakquel* of screenplay and graphic design materials allegedly authored by Karman would result in prosecution of claims for copyright infringement.  (Karasik Decl., ¶9, Ex. 5; Ruga Decl., ¶17.)

Fox chose to defend its copyright interests under the Agreement, responding with a detailed letter outlining the deficiencies in Plaintiffs' threatened copyright claims.  (Karasik Decl., ¶10, Ex. 6.)  As one principal bar to Plaintiffs' claims, Fox pointed to the definition of Property under the Agreement, which gives Fox the right to use any materials allegedly authored by Karman.  (*Id*. at 2-3.) The Referee ultimately relied on that fundamental point to dismiss Plaintiffs' Copyright-related

Claims.  (Karasik Decl., ¶15(c), Ex. 8, MTD Order at 2-4.)  Fox also responded to other claims set forth in Plaintiffs' October 2009 letter, including the Purchase Price Claim and Merchandising Claim that would later be asserted in the Complaint.  Fox advised that the answer to all of Plaintiffs' claims was "found in the plain language of the Agreement."  (Karasik Decl., ¶10, Ex. 6 at 1.)  Despite Plaintiffs' threats that a copyright infringement lawsuit would follow, and their vow to recover substantial damages, Fox released *The Squeakquel* as planned on December 23, 2009.  (*Id.*, ¶9.)

Though fully advised of key factual and legal deficiencies in their claims, Plaintiffs nonetheless commenced litigation on April 21, 2010 after a letter of January 27, 2010 from Plaintiffs' counsel "rejecting" Fox's analysis. (Karasik Decl., ¶11, Ex. 7.)  Plaintiffs sought to recover their attorneys' fees if they prevailed:  the Complaint requests attorneys' fees for claims under the Act.  (Complaint, ¶69, Prayer for Relief, ¶7.)

**B.**     **Fox Enforces the 638 Reference to Compel Adjudication of the Copyright-related Claims in this Reference Proceeding**

Despite Plaintiffs' agreement to resolve "any claim or dispute arising out of [the] Agreement" in a general, non-jury reference pursuant to Section 638 (Agreement, ST&C, ¶21(a)(ii)), Plaintiffs refused to go forward with the reference. (Karasik Decl., ¶¶17-18, Ex. 9-10.)  Plaintiffs pointed to their copyright claims as the sole reason why a reference could not proceed.  Specifically, Plaintiffs argued that their copyright claims were not subject to the forum selection clause because they did not arise out of the Agreement (CD Dkt. No. 17 at 2) and that "even if the forum selection clause purported to cover Karman's copyright claims," it still could not be enforced because a Section 638 referee "can only adjudicate claims over which the state courts have jurisdiction, not claims under the U.S. Copyright Act over which the federal courts have exclusive jurisdiction" (*Id.* at 2-3.)   As a result, as its first responsive pleading, Fox filed a motion to enforce the dispute resolution clause of the Agreement. (Karasik Decl., ¶18; CD Dkt. No. 13.)

The District Court on August 12, 2010 granted Fox's motion to enforce the reference ("Reference Order"), ruling that the resolution of the Copyright-related Claims involved interpretation of the Agreement and was therefore within the ambit of the forum selection clause and that there was "no jurisdictional bar to enforcement of the parties' agreement to refer their disputes to a Section 638 Reference." (Karasik Decl., ¶19, Ex. 11, Reference Order at 8-9.)[3]  While that ruling should have permitted these reference proceedings to commence, Plaintiffs instead filed a Petition for a Writ of Mandamus to challenge the Court's ruling (which was summarily denied) and also appealed the District Court's decision to the Ninth Circuit.   (*Id.*, ¶20, Ex. 12.) Substantial briefing of the issues ensued, followed by oral argument in the Ninth Circuit.  (*Id.*, ¶¶21-22.)  Ultimately, the appeal was dismissed for lack of jurisdiction in a unanimous opinion which emphasized that 638 Reference is an "alternative dispute resolution designed to move disputes out of court and lower the cost of trial proceedings." *Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*, 673 F.3d 1267, 1273 (9th Cir. 2012).  (Karasik Decl., ¶23.)

Following the Ninth Circuit's ruling, on June 13, 2012 Plaintiffs stipulated to the appointment of the Referee to conduct these proceedings.  (CD Dkt. Nos. 32-33.) The first motion Fox filed resulted in the dismissal of the Copyright-related Claims because they are barred by the plain language of the Agreement.  (Karasik Decl., ¶¶14, 15(c).)

C.  **The Referee Dismisses Plaintiffs' Copyright-Related Claims Based on the Express Terms of the Agreement**

On December 3, 2012, the Referee dismissed the Copyright-related Claims on Fox's motion to dismiss.   (Karasik Decl., ¶15(c), Ex. 8, MTD Order at 2-3.) Specifically, the Referee concluded that the express terms of the Agreement controlled because when the broad definition of "Property" is "considered in conjunction with

---

[3] The District Court cast doubt on Plaintiffs' copyright claims, noting the "expansive" grant of rights to Fox to make films based on *Alvin* materials.  (Karasik Decl., ¶19, Ex. 11, Reference Order at 7, n. 4.)

the language contained in the Standard Terms and Conditions there is no question that the screenplay and graphic designs are literary material within the meaning of Property as defined in the Agreement." (*Id.* at 2:22-25.)  The Referee further noted that the ST&C provide that Fox has "[t]he sole and exclusive right . . . to use all of the elements contained in the Property . . . to adapt, rearrange and make any changes in [the Property]. . . to use a portion or portions of the Property . . . to change the characters in the Property, to change the descriptions of said characters, and to use all or any part of the foregoing in new versions, adaptions, other motion pictures, Remakes and Sequels . . . ." (*Id.* at 3:1-13, citing Agreement, ST&C, ¶6(b).) The Referee ruled that "Plaintiffs' suggestion that the screenplay and graphic designs are outside the Agreement would defeat the purpose and intent of the Agreement."  (*Id.*) Further, the Referee held that the "claim to *The Squeakquel* screenplay . . . is inconsistent with [and] in direct contravention of the grant of rights contained in the parties' Agreement."  (*Id.* at 3-4.)  With respect to the unjust enrichment claims, Plaintiffs did not dispute that the Copyright Act preempted any claims based on Fox's use of Karman's alleged screenplay and graphic design materials (CD Dkt. No. 46 at 19) and the Referee found the language of the Agreement "dispositive" of these claims as well.  (Karasik Decl., ¶15(c), Ex. 8, MTD Order at 2:1-3.)

Based on this record, Fox is entitled to recover all reasonable attorneys' fees and costs incurred in defense of the Copyright-related Claims, including enforcement of the 638 Reference that enabled the Referee to rule on the matter.

## III. **FOX IS ENTITLED TO RECOVER ITS REASONABLE FEES IN DEFENSE OF THE COPYRIGHT-RELATED CLAIMS**

### A. **The Copyright Act Authorizes Attorneys' Fees When A Successful Defense Against Claims Furthers The Purposes of the Act**

The Copyright Act vests discretion in district courts to award reasonable attorneys' fees and costs to the prevailing party.  17 U.S.C. § 505; *Mattel, Inc. v. MGA Entertainment, Inc.*, 705 F.3d 1108 (9th Cir. 2013).  The Supreme Court and Ninth

Circuit direct that fee awards are available to prevailing plaintiffs and defendants under the same standard. *Fogerty I,* 510 U.S. at 527, 534; *Fogerty II,* 94 F.3d at 558; *see also Historical Research v. Cabral,* 80 F.3d 377, 378 (9th Cir.1996); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007).

"The most important factor in determining whether to award fees under the Copyright Act . . . is whether an award will further the purposes of the Act." *MGA Ent'mt*, 705 F.3d at 1110 (citing *Fogerty II,* 94 F.3d at 558). Those purposes include "encourag[ing] the production of original literary, artistic, and musical expression for the good of the public" and enhancing "predictability and certainty of copyright ownership." *Fogerty I*, 510 U.S at 524. The assertion of baseless claims is inimical to the purposes of the Act; "fear of specious lawsuits [] can chill creative expression resulting in the diminution of creative works." *Zobmondo Entm't LLC v. Falls Media LLC*, 2009 WL 202034 at *3 (C.D. Cal. Jan. 23, 2009). Thus, awarding fees to defendants who withstand such claims encourages the release of new works and serves as a needed deterrent. *Id.*

In addition to evaluating whether prosecution or defense of a suit advances the purposes of the Copyright Act, the Ninth Circuit has identified the following factors a court may consider: (1) the degree of success obtained by the moving party; (2) the frivolousness of any claims; (3) the motivation for the claims; (4) the objective reasonableness of the factual and legal arguments advanced in support of them; and (5) the need for compensation and deterrence. *See Fogerty II*, 94 F.3d at 558 (citing *Fogerty I*, 510 U.S. at 535, n.19). Although a court may consider all factors, it is settled that no finding of bad faith is necessary to award fees. Rather, an award is appropriate where, as here, the defendant prevailed fully, the claims were groundless, and – most importantly – the defense of the copyright claims serves the purposes of the Act. *Id.* at 560.

Thus in *Fogerty II*, the District Court awarded defendant Fogerty $1,374,519 in attorneys' fees under the Act for vindicating its copyright interests in a manner that

8

"secured the public's access to an original work of authorship and paved the way for future original compositions." *Id.* at 556.  The claims in *Fogerty II* were not dismissed as objectively unreasonable – the case was decided by jury trial - but the Court nonetheless held that Fogerty's successful defense warranted a fee award.  The District Court concluded that "the benefit conferred by Fogerty's successful defense was not slight or insubstantial relative to the costs of litigation, nor would the fee award have too great a chilling effect or impose an inequitable burden on Fantasy, which was not an impecunious plaintiff." *Id.*  The Ninth Circuit rejected arguments that an attorney's fees award was improper because plaintiff had "conducted a 'good faith' and 'faultless' lawsuit upon a reasonable factual and legal grounds," noting that while all factors are available to guide a court's discretion, "a finding of bad faith, frivolous or vexatious conduct is no longer required." *Id.* at 560.

### B.  Fox's Successful Defense of this Lawsuit Warrants a Fee Award

1.  Fox's Successful Defense of the Copyright-related Claims Vindicated the Purposes of the Copyright Act

Fox prevailed fully on the Copyright-related Claims in this matter, achieving dismissal of the claims by motion to dismiss.  The "degree of success achieved" factor weighs heavily in favor of a fee award; Fox prevailed completely at the first possible procedural juncture.

Furthermore, Fox's successful defense furthered the fundamental copyright "purpose of enriching the general public through access to creative works . . . ." *Fogerty I,* 510 U.S at 527.  Fox's defense also furthered the important interests of "predictability and certainty of copyright ownership." *Id.* at 534.  Had Plaintiffs' interpretation of the Agreement prevailed, with Plaintiffs claiming copyright interests to scenes, dialogue, character depictions and other materials in the film, Fox's ability to make future films would have been significantly compromised.  Under Plaintiffs' theory, any future *Alvin* films that included or built upon Plaintiffs' materials would also be subject to copyright claims, thus muddying the rights and undermining Fox's

1  ability to make additional pictures.  Fox's resolve to litigate the copyright claims to

2  conclusion cleared the way not only for *The Squeakquel*, but for Fox to produce future

3  films based on the Property, thereby furthering the purposes of the Act by providing

4  "predictability and certainty" as to Fox's rights.

5          Equally important, Fox's enforcement of 638 Reference for copyright claims

6  promotes expeditious and cost-effective resolution of "specious [copyright] lawsuits

7  [that] can chill creative expression resulting in the diminution of creative works."

8  *Zobmondo Entm't LLC,* 2009 WL 202034 at *3; *Bagdasarian Productions,* 673 F.3d

9  at 1273 (638 Reference is "designed to move disputes out of court and lower the cost

10 of trial proceedings").  But-for Plaintiffs' refusal to participate in the reference

11 proceeding, Fox would have had the opportunity to vindicate and clarify its

12 substantive rights under the Agreement within months of the filing of the Complaint.

13 (Karasik Decl., ¶¶17-23.)  An attorneys' fees award is particularly appropriate because

14 Fox incurred substantial fees to vindicate the very interests that Plaintiffs frustrated by

15 refusing to participate in the reference:  prompt and expeditious resolution of

16 copyright claims that risked chilling the exercise of rights favored under the Act.[4]

17              2.      The Referee's Dismissal of Plaintiffs' Copyright-related Claims

18                      Reflects That Those Claims Were Objectively Unreasonable.

19          A motion to dismiss may only be granted where the facts alleged in the

20 Complaint cannot as a matter of law support recovery on the theory alleged.  The

21 standard on a motion to dismiss is strict.  As stated in Plaintiffs' Opposition to Fox's

22 motion to dismiss, "[a] complaint should not be dismissed for failure to state a claim

23 unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

24 _____

[4] The Karasik Declaration describes Fox's attempt to dissuade Plaintiffs from delaying
25 the proceedings with numerous baseless arguments seeking to avoid 638 Reference.
(Karasik Decl., ¶¶17, 20-21, Exs. 9-10, 12.) Aside from their challenge to long-
26 standing Ninth Circuit authority that claims "arise out of" a contract when contract
interpretation is necessary to resolve the controversy, Plaintiffs advanced the
27 inexplicable position that, even though copyright claims can be ordered to arbitration
by the federal court and agreements to resolve disputes by arbitration under Cal. Code
28 Civ. Proc. §1281 are enforceable in federal court, 638 Reference cannot be enforced
by federal courts for copyright claims.  (*Id.*, ¶22(2)(d).)

his claim which would entitle him to relief."  (CD Dkt. No. 46 at 14.)  This is an objective test, and the Referee ruled that it was met with respect to Plaintiffs' claims that Fox's alleged use of Karman's materials gave rise to Copyright-related Claims. Fox's motion to dismiss the Copyright-related Claims emphasized both paragraph 1 of the Agreement – the expansive definition of "Property" (which includes "characters . . . plots, themes, titles, story lines . . . and any other elements relating to any of the foregoing, now existing or created hereafter") – as well as paragraph 9 of the Standard Terms and Conditions, which authorized Fox's use of "all other existing and future drafts, revisions, arrangements . . . and all other versions of the Property" that were in existence or would be later created by Plaintiffs.  (CD Dkt. No. 45 at 16-19.) Consistent with the clear language of the Agreement, the Referee ruled that there was "no question" that Fox possessed the right to use the material submitted by Plaintiffs. (Karasik Decl., Ex. 8, MTD Order at 2:22-24.)  The Referee concluded that Plaintiffs' claims "would defeat the purpose and intent of the Agreement" and were "in contravention of [its] grant of rights."  (*Id.* at 3:20-4:2.)  The fact that the Copyright-related Claims could not survive the pleading stage further demonstrates that the claims were objectively unreasonable from the outset.

The three determinations discussed above – that Fox prevailed completely on Plaintiffs' Copyright-related Claims, that its defense served the purposes of the Copyright Act, and that Plaintiffs' claims were objectively meritless – amply justify a fee award under the Copyright Act. *Fogerty II*, 94 F.3d at 556.  Thus, in *Goldberg v. Cameron*, 2011 WL 3515899, at *5 (N.D. Cal. Aug. 11, 2011) the Court awarded fees under the Act after defendant successfully moved to dismiss plaintiff's copyright infringement claims, citing "the lack of merit in [plaintiff's] claims" and finding fees appropriate notwithstanding any "misguided belief" plaintiff may have had in the merit of his position.  The Ninth Circuit similarly affirmed an award of attorneys' fees for a defendant who prevailed on summary judgment based on the defendants' "total success in defending against [plaintiff's] copyright claims," which were "completely

11

contradicted by the language of the [operative agreement] and were, "if not frivolous, at least factually unreasonable." *Malijack*, 81 F.3d at 890.  Those same descriptions apply to the disposition here – even more so, since Plaintiffs' claims did not even survive a motion to dismiss – and a fee award is amply justified.

For all of these reasons, Fox is entitled to reasonable fees for defending the Copyright-related Claims, even without the Referee reaching the question of whether Plaintiffs brought their claims in good faith.  But as discussed below, the demonstrable bad faith and improper motivation underlying this litigation only further underscores the appropriateness of a fee award.

## C.   Plaintiffs' Copyright-related Claims Were Not Just Objectively Unreasonable, but Contrived in Bad Faith

A typical copyright claim involves a dispute whether plaintiff has authored protectable expression that was used by defendant without plaintiff's consent. Nothing of the sort exists here.  The record demonstrates that Plaintiffs insisted that the materials Karman submitted be used by Fox under the auspices of their approval rights and role as producers.  (Ruga Decl., ¶18, Ex. 18.)  Having mandated the inclusion of these materials, Plaintiffs plotted to assert the Copyright-related Claims to leverage a contract renegotiation to get more money after Bagdasarian decided he could not "live with [his] present deal."  (*Id.*, ¶¶12-13, Exs. 11-15.)  Plaintiffs' bad faith and improper motivation in bringing this lawsuit weighs strongly in favor of a fee award.

The first *Alvin* film, released in December 2007, was a huge box office success. (Ruga Decl., ¶4.)   The proceeds of *Alvin* resulted in Contingent Compensation to BPL of over ███████, much of which it received in profit participation payments from June 2008 to March 2009. (Ruga Decl., ¶4, Ex. 1.)  Unsatisfied with the ███████ he received from the movie, Bagdasarian sought more, asserting dissatisfaction with Fox's merchandising activity on *Alvin*.  (*Id.*, ¶5, Exs. 2-3.)  Even though the Agreement affords Fox full discretion how, and even whether, to conduct

12

merchandising activity, Bagdasarian complained to Fox Chairman Tom Rothman in 2008 that Fox had failed to adequately perform and that Bagdasarian was entitled to millions more from merchandising.  (*Id.*)  Asserting that he could "do better," Bagdasarian requested that Fox "give back" to BPL the merchandising rights that Fox acquired under the Agreement, so that Bagdasarian could control those rights, take a fee for conducting merchandising, and pay Fox half the remaining revenues.  (*Id.*)

Bagdasarian's attitude hardened (and this lawsuit was born) when Fox rejected his demand to renegotiate the merchandising rights.  On January 8, 2009, Rothman e-mailed Bagdasarian with a definitive answer:  Fox would not give back the merchandising rights.  (Ruga Decl., ¶7, Ex. 6.)[5]  Bagdasarian explained to his agent Waterman that, in light of Rothman's response, Bagdasarian "could not live with [his] present deal."  (*Id.*, ¶8, Ex. 7.)  He instructed Waterman to demand that Fox pay a four-fold increase in the "back-end" (seeking 10% of Defined Gross Proceeds instead of the 2.5% Bagdasarian had agreed-to) or alternatively, "the advance will have to be $10M" (instead of the $3 million advance payable under the Agreement).  (*Id.*)  Bagdasarian directed Waterman to counteroffer on the writing agreement offered to Karman, instructing Waterman to seek "additional profit sharing points" for Karman's claimed services.  (Ruga Decl., ¶8, Ex. 7.)  Thereafter, on January 13, 2009, Bagdasarian instructed Waterman to allow Fox "a day to put [a] proposal together" [with respect to Karman's claimed written materials and graphic designs] and if that proposal was unsatisfactory, Bagdasarian contemplated that Fox would have to "start over" with new Chipette designs "as well a new story and script for our approval." (Ruga Decl., ¶10, Ex. 9.)  In other words, Bagdasarian planned to use his approval rights to assert that Fox could not without paying additional compensation use the material he and Karman had insisted (and would continue to insist) that Fox include in

---

[5] Rothman also explained that the decision to release the first picture at Christmas in 2007 may have shortened the lead-time for licensing and merchandising, but resulted in a movie that earned over $200 million at the box office; this franchise-building success would make for greater licensing and merchandising opportunities overall. (Ruga Decl., ¶7, Ex. 6.)

DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS

*The Squeakquel*, and thus Fox could not release the picture.  (Ruga Decl., ¶16, Ex. 16.)

On January 15, 2009, Bagdasarian sent a heated response to Rothman's January 8 email and declared that while there previously had been "mutual respect" between the parties, Fox's relationship with BPL had suffered a "seminal moment," and that it would now be necessary to "resolve a host of outstanding issues." (*Id.*, ¶9, Ex. 8.) Waterman explained to Fox that Bagdasarian was demanding additional back-end profits because he felt "cheated" out of $5 to $10 million by Rothman's refusal to give back the merchandising rights and that Bagdasarian and Karman "feel cheated no matter what [Fox] do[es]." (*Id.*, ¶11, Ex. 10.)  In a January 30, 2009 e-mail, Bagdasarian explained to Waterman that "a lawsuit from us where they are using services (of Chipette design and writing) they don't own will ultimately bring [Fox] around." (*Id.*, ¶12, Ex. 11.)

Bagdasarian retained counsel in February 2009 (Ruga Decl., ¶13, Exs. 12-13) and contemplated sending (but did not send) Fox a "Cease and Desist letter" related to Karman's alleged written materials and graphic services.  (*Id.*, Ex. 12.)[6]  Through April and May 2009, Bagdasarian and Waterman discussed the copyright infringement claim they contemplated against Fox (*id.*, ¶14, Exs. 14-15), even exchanging news stories about copyright infringement lawsuits brought against other studios, with Bagdasarian noting he would be "follow[ing] in the footsteps" of these other suits.  (*Id.*, Ex. 15.)  During the January and February 2009 time period, when Bagdasarian was plotting to sue Fox for copyright infringement to "bring [Fox] around" to renegotiate the contract, he and Karman continued to urge Fox to use the materials that Karman submitted in *The Squeakquel*.  (Ruga Decl., ¶¶15-16, Ex. 16.) Indeed, they repeatedly attempted to force Fox to allow Karman to revise the

---

[6] The decision not to send a cease and desist letter is telling.  A plaintiff with a legitimate copyright claim gives notice at the earliest time that material should not be used; Plaintiffs had no desire to keep Fox from using their materials, but instead affirmatively demanded that Fox include Karman's writing in the screenplays, intending instead to later spring a copyright claim.

14

screenplay or to incorporate her materials into the film by leveraging their approval

rights, insisting that there was no storyline approval *unless* her materials or ideas were

incorporated. (*Id.*, ¶¶6, 16, Exs. 4, 16.)  This strategy, cloaked in the ostensible desire

to "protect the franchise" and make an emotionally rich film, had another, undisclosed

purpose:  to force the inclusion of materials that Plaintiffs intended to later claim

supported a copyright infringement claim.

It was thus not until October 2009, after photography on the film was

completed, the advertising campaign was underway, and the movie was only 90 days

from release, that Plaintiffs sent a demand letter to Fox threatening a copyright claim.

(Karasik Decl., ¶9, Ex. 5.)  At this point, Bagdasarian believed, Karman's

contributions were intertwined in the film and Fox would have to make a deal to

enable the picture's release.  Plaintiffs now asserted that Fox was not authorized to use

any of Karman's allegedly copyright protected materials (written submissions or

graphic designs) and that any use of the materials in the film would result in Fox

hearing from "litigation counsel." (*Id.*, Ex. 5 at 1-2, 5.)

The Referee need not speculate or draw any inferences to determine Plaintiffs'

improper motivation in bringing their copyright claims – that motivation is set out in

crystal clear terms in Bagdasarian's own e-mails.  Though it is the rare case that offers

such unequivocal evidence of a plaintiff's improper motivation, other indicia of

improper motivation are present here as well.  As noted, Plaintiffs pursued their

claims even after Fox pointed out fundamental deficiencies in their copyright theories

in a pre-litigation letter.  (Karasik Decl., ¶10, Ex. 6.)  Courts have held that pursuit of

claims after receiving notice of their lack of merit supports a finding of improper

motivation, strongly militating in favor of a fee award.[7]  *Porto*, 659 F.Supp.2d at 617

---

[7] Even apart from the Agreement's clear grant of rights to Fox to use Alvin materials,
Karman's insistence that her materials be used in the film (Ruga Decl., ¶6, Ex. 16)
posed yet another insuperable bar to Plaintiffs' copyright claim. Though it was not
necessary to reach this issue in the litigation given the Agreement's clear terms,
Karman necessarily gave Fox an implied license to use her materials by insisting that
they be included in the picture. *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558-
59 (9th Cir. 1990) (no copyright claim where plaintiff invites defendant to use

15

(fees awarded where "plaintiff's first counsel was warned, before any action had been filed, that there was no colorable copyright infringement claim"); *see also Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 16 (1st Cir. 2005) (awarding fees because copyright litigation was instituted for improper motive to leverage demands that defendant hire plaintiff). Similarly, courts also conclude that improper motivation is present when, as here, a plaintiff pursues claims notwithstanding its access to capable counsel who could determine that such claims were without legal and factual basis. *Berry*, 2006 WL 102120 at \*9-10; *see also Love v. Mail on Sunday*, 2007 WL 2709975 at \*5 (C.D. Cal., Sept. 7, 2007) (awarding attorneys' fees to deter plaintiffs from chilling expression by advancing "unsupportable claims").

Plaintiffs' gambit to force a renegotiation failed, but not before consuming years of judicial resources, many hours of the Referee's time, and ▇▇▇▇▇▇▇ in legal fees. A fee award is warranted to condemn the improper use of the litigation process, to compensate Fox for the money it was forced to spend, and to deter Plaintiffs and others from improper adventures in litigation. Nor is Plaintiffs' bad faith limited to its assertion of the Copyright-related Claims. The same improper motive underlies the assertion of each of the baseless claims Fox has been forced to defend.

## IV.   THE RECORD REFLECTS BAD FAITH, INCLUDING DENIAL OF FOX'S REQUEST FOR ADMISSIONS, THAT PERMEATES EVERY CLAIM AND SUPPORTS AN AWARD OF ADDITIONAL FEES

After four years of litigation and ▇▇▇▇▇▇▇ in fees, one fact stands out: Plaintiffs never came forward with factual or legal support to sustain their claims. With the goal of "bringing [Fox] around" to a yet-more favorable deal (Ruga Decl., ¶12, Ex. 11), Plaintiffs were undeterred by the complete absence of evidence to support their claims, and instead pursued their objective by imposing massive costs on Fox through their aggressive and broad-ranging litigation.

materials).

16

Such actions should have consequences.  The law provides two independent bases to award Fox fees for Plaintiffs' pursuit of baseless claims.  First, Plaintiffs denied Fox's Requests for Admission ("RFAs") in the absence of any factual or legal basis for their claims.  (See Karasik Decl., ¶¶24-45, Ex. 14.)  Fees are mandatory in this situation.  Fed. R. Civ. P. 37(c).  Second, the Court is authorized under its inherent power to award fees where, as here, Plaintiffs failed to withdraw claims despite Fox repeatedly advising them of the deficiencies of their theories, instead pursuing discovery aggressively and asserting new baseless claims.

Rule 36 of the Federal Rules of Civil Procedure provides that parties may propound RFAs to ascertain what, if any, legitimate basis exists for a claim to go forward.  To encourage "attorneys and parties to identify undisputed issues early to avoid unnecessary costs," Rule 37(c)(2) of the Federal Rules of Civil Procedure mandates an award to the party forced to incur fees and expenses to establish the truth of matters set forth in RFAs, unless the resisting party can show one of four statutory exceptions.[8]  *Marchand*, 22 F.3d at 936.  Early in the reference proceeding, Fox served comprehensive RFAs seeking admissions directed to the absence of critical evidence on Plaintiffs' Purchase Price Claim, Merchandising Claim, FX Distribution Claim, and *Alvin* HBO Distribution Claim, as well as Karman's Graphic Design Services Claim.  (Karasik Decl., ¶27, Ex. 14.)  Plaintiffs denied all of them, forcing Fox to establish the truth of the matters through expensive discovery and motions for summary judgment.[9]  (Karasik Decl., ¶¶28-45.)  These facts present a paradigm case

---

[8] Specifically, under Rule 37, the "court must so order" (emphasis added) that the party who failed to admit pay the reasonable expenses, including attorneys' fees, incurred by the other party in making the proof, unless (1) the request was held objectionable, (2) the admission sought was of no substantial importance, (3) the party failing to admit had "a reasonable ground to believe that it might prevail on the matter" or (4) there was other good reason for the failure to admit.  Fed.R.Civ.P. 37(c)(2); *see also Marchand*, 22 F.3d at 936.

[9] No motion was necessary on the Merchandising Claim, because after Fox was forced to incur substantial expenses to conduct document discovery, fact investigation, witness interviews, interviewing experts and legal analysis, Plaintiffs dismissed the claim.  (Karasik Decl., ¶34.)  As a result, Fox prevailed on the merits of the Merchandising Claim and an award of reasonable fees is warranted on each of the

17

for award of fees under Rule 37(c)(2).  *See, e.g., Graham v. Cnty. of Los Angeles*, 2012 WL 5363533 at *2 (C.D. Cal. Oct. 30, 2012) (awarding sanctions pursuant to Rule 37(c)(2) after unadmitted matters were proven on summary judgment). Plaintiffs' denial of the RFAs significantly affected the cost of Fox's defense and contravened the goal of avoiding unnecessary discovery.  *Marchand*, 22 F.3d at 937. Because Plaintiffs cannot meet their burden to show "a reasonable ground to believe that [Plaintiffs] might prevail" on any of the dismissed claims, or any other good reason for their failure to admit, a fee award is warranted. Fed. R. Civ. P. 37(c)(2).

Moreover, aside from this statutory authority supporting a fee award, the Referee has inherent power and discretion to "award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Leon*, 464 F.3d at 961; *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).  Bad faith includes pursuit of a frivolous argument or unmeritorious claims for the purpose of harassing an opponent, or which delays or disrupts the litigation.  *Id.*; *see also Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).  Sanctions may be awarded in an amount necessary to compensate for the harm caused by litigation misconduct.  *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir 2011); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1111 (9th Cir. 2005) (affirming award of sanctions "designed to compensate [plaintiff] for unnecessary costs and attorney's fees").

Here, Fox made repeated efforts to dissuade Plaintiffs from their pursuit of baseless claims. (Karasik Decl., ¶¶46-64, Exs. 6, 16, 17, 19.)  This included numerous meet-and-confer exchanges and written correspondence where Fox pointed out key factual and legal deficiencies in the claims.  (*Id.*, ¶¶45-64, Exs. 6, 16-23.)  Fox identified the complete absence of evidence in Plaintiffs' discovery responses and key

matters Plaintiffs denied in the RFAs.  *See Int'l Marble & Granite of Colo., Inc v. Cong. Fin. Corp.*, 465 F.Supp.2d 993, 998 (C.D. Cal. 2006) (holding that defendant was prevailing party for fee purposes after plaintiff voluntarily dismissed complaint without prejudice); *see also* L.R. 54-2.4.

18

admissions found in Plaintiffs' own documents that contradicted the theories they pursued.  (*Id*.)  Fox urged Plaintiffs to reconsider their course and to spare Fox the expense of further litigation or dispositive motions on claims lacking any basis.  (*Id*., Exs. 6, 16, 17, 19.)

Plaintiffs abandoned some claims only after Fox expended significant attorneys' fees to oppose them; with respect to the FX claim, only *after* Fox moved for partial summary judgment. (Karasik Decl., ¶¶57-58, Ex. 17.)  Ultimately, the Referee dismissed most of the remaining claims for the very reasons Fox urged Plaintiffs to withdraw them months and hundreds of thousands of dollars earlier. (Karasik Decl., ¶¶30, 40, 43, Exs. 15, 24.)  Fox's motion for fees can come as no surprise to Plaintiffs in view of Fox's several letters protesting their pursuit of baseless claims and emphasizing counsel's obligations not to advance such claims.  (Karasik Decl., Exs. 16, 17, 19.)

The prejudice to Fox of Plaintiffs' stubborn pursuit of meritless claims was compounded many-fold because Plaintiffs asserted no fewer than *fifteen* different claims against Fox (and attempted to add four others in their proposed Second Amended Complaint).  (Karasik Decl., ¶¶24, 64, Ex. 24.)  Indeed, as claims were dismissed, Plaintiffs prolonged the litigation by inventing new theories.   And Plaintiffs abused the broad scope of discovery available under the Federal Rules to serve invasive document demands and to pursue fishing expeditions in the hope of uncovering evidence to support their groundless claims.  (*Id*., ¶¶65-69.)  Fox faced aggressive document and deposition discovery on all of Plaintiffs' claims, resulting in numerous Joint Statement discovery disputes and expensive document production activity.  (*Id*.)[10]

---

[10] At the same time, Plaintiffs failed to comport with even the most basic discovery obligations.  The Referee found that "Plaintiffs failed to meet their duty to preserve documents" because they only began formal preservation efforts four months after they filed suit and at least a year after their preservation duty attached. (Karasik Decl., ¶¶70-75, Ex. 25, Spoliation Order, at 10.)

19

1  |  This unrestrained misuse of the litigation process, born out of Bagdasarian's

2  commitment (and financial wherewithal) to try to leverage Fox into acceding to his

3  extra-contractual demands, must have consequences.  Fox respectfully seeks an award

4  of fees to at least partially compensate it for this abuse.

5  **V.  FOX IS ENTITLED TO NO LESS THAN $837,006 IN FEES ON THE**

6  **COPYRIGHT-RELATED CLAIMS AND $850,000 IN FEES FOR THE**

7  **OTHER BASELESS CLAIMS**

8  **A.  Fox Requests $837,006 For its Successful Defense of the Copyright-**

9  **Related Claims Plus the Fees Incurred to Pursue this Motion**

10  The Ninth Circuit has adopted the "lodestar" method of calculating reasonable

11  attorneys' fees to be awarded to a prevailing party under a federal law such as the

12  Copyright Act.  *See, e.g., United Steel Workers of America v. Phelps Dodge Corp.*,

13  896 F.2d 403 (9th Cir. 1990); *Ouesada v. Thomason*, 850 F.2d 537 (9th Cir. 1988).

14  The "lodestar" is calculated by multiplying the number of hours reasonably expended

15  by a reasonable hourly rate.  *United Steel Workers of America*, 896 F.2d at 406.

16  The reasonableness of the rates charged by Alston & Bird ("A&B") to Fox in

17  this matter are not in dispute:  Plaintiffs have agreed the rates charged by A&B's

18  attorneys and paralegals were reasonable.  (Karasik Decl., ¶¶77-79, Exs. 26-29.)[11]

19  The hours expended by A&B in defeating Plaintiffs' Copyright-related Claims

20

21  [11] As detailed in the Karasik Declaration, Mr. Karasik's rate to Fox was ███ in 2009;

22  ███ in 2010-2011 and ███ from 2012-2013; Ms. Ruga's rate to Fox ranged from ███ in 2009 to ███ in 2013, and junior associates were charged at rates ranging

23  from ███ to ███ (Karasik Decl., Exs. 2-3.)  These rates are well within the range of "rates of attorneys practicing in the forum district." *Gates v. Deukmejian*, 987 F.2d

24  1392, 1405 (9th Cir. 1992); *POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL

25  4351842 (C.D. Cal. Sept. 22, 2008) (concluding in 2008 that "hour[ly] rates of $700, $750 . . . for partners and $425, $400, $360, $335, and $275 for associates are

26  reasonable.  Indeed, A&B's rates are substantially less than those charged by

27  Plaintiffs' counsel.  *See In re American Suzuki Motor Corp.*, 2012 WL 6645312, No. 8:12-bk-22808-SC (CD BK Cal, Nov. 21, 2012) (Irell compensated for hourly rates of

28  $935-$975 for partners, $395 to $750 for associates, and $245 for a paralegal).

20

are also reasonable. Fox herewith submits detailed summaries of its billing statements, including verbatim line-item entries, that detail the work A&B performed in defense of the Copyright-related Claims. (Karasik Decl., ¶¶2-7, Exs. 1-4.) These activities were reasonable to defend against copyright claims seeking hundreds of millions of dollars brought by well-funded Plaintiffs who retained two large firms, Paul Weiss and Irell & Manella, to attack Fox.

Fox's request for fees under the Copyright Act includes both the defense of the copyright claims and the unjust enrichment claims based on the same material. A party that prevails on a claim under the Act may recover attorneys' fees for defending against the copyright and any related claims. *The Traditional Cat Ass', Inc. v. Galbraith*, 340 F.3d 829, 833 (9th Cir. 2003); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229. Here, Plaintiffs' claims for copyright infringement and "joint owner" status are both indisputably predicated on rights created by the Act. (*See* FAC ¶¶57, 59, relying on 17 U.S.C. §§ 101, 201(a) & Compl., ¶65, relying on 17 U.S.C § 106; *Robinson v. Lopez*, 2003 WL 23162906 at *5 (C.D. Cal. Nov. 24, 2003) (awarding defendant fees incurred in connection with copyright co-ownership or co-authorship claims). The state law claims for unjust enrichment are plainly related, as they "involve a common core of facts or are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003); *see also Entm't Research Group*, 122 F.3d at 1229. Specifically, the unjust enrichment claims were based on Fox's alleged use of Karman's materials in *The Squeakquel*, the same basis for the copyright claims. (FAC., ¶¶71, 73 (alleging Fox was unjustly enriched by virtue of its "exploitation" of Karman's materials). As noted, Karman did not dispute that any claims for Fox's use of Karman's materials was preempted by the Act. (CD Dkt. No. 46, at 19.)[12]

---

[12] The admission that the claims were preempted means that the claims arose under the Copyright Act (even if not pleaded in that way), therefore supplying a second independent basis for awarding the fees associated with disposing of them. *Rosciszewski v. Arete Associates*, Inc., 1 F.3d 225, 232-33 (4th Cir. 1993) (stating that

21

Fox's fee request also includes the fees it incurred to successfully enforce the dispute resolution clause designating a 638 Reference.  Plaintiffs should not be heard to contend that these fees are unrelated to the copyright claims.  The presence of the copyright claims in the case was the basis for all of Plaintiffs' arguments to avoid enforcement of the reference clause.  (CD Dkt. No. 17, at 14-15.)  Fox vindicated the use of 638 Reference to obtain expeditious resolution of baseless copyright claims; even where such important policies were not at issue, other courts have similarly held recoverable the fees incurred to secure the appropriate forum in copyright cases.  *See Domingo*, 211 F.3d 1273, 2000 WL 262590 at *2 (fees associated with defendant's removal of a copyright action to federal court recoverable); *Brayton,* 487 F. Supp. 2d at 1131 (awarding fees incurred to confirm an arbitration award involving copyright claims).

Fox is also entitled under Section 505 of the Act to recover its fees for preparation of this motion, including the anticipated cost of a reply paper, and seeks $135,000 in that category.  (Karasik Decl., ¶¶77-78.); *see* 17 U.S.C. §505 (permitting recovery of "full costs" and a "reasonable attorney's fee"); *see also Goldberg*, 2011 WL 3515899 at *8  (allowing recovery of incurred with preparation of fee motion under Section 505); *Ryan v. Editions Ltd. W., Inc.*, 2010 WL 3987829 at *5 (N.D. Cal. Oct. 12, 2010) (granting defendants fees motion under Section 505 for the "entire amount sought", which included "time spent on the pending motion").  The cost of this Motion included the time-consuming tasks of identifying and reviewing all time-entries applicable to the Copyright-related Claims, allocating the time to ensure that Fox seeks recovery only for the copyright-related work, and providing the Referee detailed information about the activities Fox undertook in defense of the Copyright-related Claims and other baseless claims.  (Karasik Decl., ¶¶75-76.)  Fox notes that it made repeated efforts to meet and confer with Plaintiffs over the necessity of this

---

when a state-law claim is preempted by the Act the claim is necessarily federal in character and therefore Section 505 of the Act applies).

DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS

Motion, inviting Plaintiffs to advise if there was any amount of fees and costs they were willing to pay to avoid motion practice. (*Id.*, ¶¶77-78, Exs. 26-29.)  Plaintiffs never responded to that inquiry, and instead demanded that Fox cease efforts to meet and confer and simply file the Motion. (*Id.*, ¶29, Ex. 29.)

**B.      Fox Requests $850,000 For Its Successful Defense of the Remaining Baseless Claims**

As detailed in the Karasik Declaration, Plaintiffs' pursuit of other baseless claims has resulted in substantial attorneys' fees and expenses to Fox. (Karasik Decl., ¶25, Ex. 13.)  Though Fox has incurred fees of over ████████ to defend against these other claims (*id.*), it asks the Referee to award only $850,000, thus eliminating any possible argument that the fees incurred were not reasonably necessary to defend Plaintiffs' overbearing litigation.  An award of such fees includes amounts that are mandatory under Rule 37 as a result of Plaintiffs' denial of RFAs – Fox incurred over a $1 million in that category alone - and represent a small portion of the fees Fox incurred to litigate claims that never had any factual or legal basis. (*Id.*, ¶¶31, 35, 38, 41, 44.)

**C.      Fox is Entitled to Recover Taxable Costs of $89,418.01 and an Additional $7,469.72 in Non-Taxable Costs ("Full Costs")**

Concurrently herewith, Fox has submitted a Notice of Application to Tax Costs and Proposed Bill of Costs ("Application") that identifies $89,418.01 in costs that Fox is entitled to recover as a matter of right under Rule 54(d) as the prevailing party.  These costs include $48,499.87 for payments to JAMS and to Case Anywhere for monthly access fees.  The Agreement provides for recovery by the prevailing party of the costs associated with the reference proceeding. (Declaration of Casondra K. Ruga in support of Application to Tax Costs ("Ruga Decl. re taxable costs"), ¶2(f), Ex. F, Agreement, STC, ¶21(a)(ii).)  Fox has identified these costs in its Application because Rule 54(d) authorizes a court to award costs authorized by statute or contract. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1997);  *Jardin v.*

23

1     *Datallegro, Inc.*, 2011 WL 4835742 at \*2 (S.D. Cal. Oct. 12, 2011).

2        In addition to Fox's taxable costs under Rule 54(d) (including the costs it is

3 entitled to pursuant to the Agreement), the Copyright Act allows the "recovery of full

4 costs," including out-of-pocket expenses and otherwise non-taxable costs. *Twentieth*

5 *Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005). Fox

6 has incurred at least $7,469.72 for costs in this category that it seeks to recover under

7 the Act. (Ruga Decl. re taxable costs, ¶4, Ex. I.)

8        Fox details all of its costs so that any dispute about the matter can be decided by

9 the Referee, consistent with the District Court's Order directing all disputes in this

10 matter to be decided in the reference. Once the Referee determines the recoverable

11 costs, Fox will submit that figure to be added to the Judgment entered by the District

12 Court based on the Statement of Decision.

13        Even though this matter has been directed to 638 Reference, Plaintiffs

14 apparently contend that the clerk of the Court, rather than the Referee, must initially

15 hear any disputes about costs, that any disagreements about costs must then be

16 referred to the District Court, who would then necessarily direct the disputes to be

17 heard by the Referee. Fox submits that the Referee should resolve any disputes about

18 costs to avoid any unnecessary delay in finalizing the judgment in this matter.

19 **VI.   CONCLUSION**

20        For the foregoing reasons, Fox respectfully requests that the Court order

21 Plaintiffs to pay Fox a total of $1,918,893.73 for: (1) attorneys' fees in defense of the

22 Copyright-related Claims of no less than $837,006; (2) $135,000 in fees associated

23 with the preparation of this Motion and the anticipated reply; (3) an additional award

24 of fees against Plaintiffs of no less than $850,000 pursuant to Rule 37(c)(2) and the

25 Court's inherent power to sanction the bad faith assertion of claims; (4) an award of

26 Rule 54(d) taxable costs of $89,418.01 as detailed in Fox's accompanying

27 ///

28 ///

1    Application, and (5) an additional award of non-taxable "full costs" under Section 505
2    of the Act in the amount of $7,469.72.

3    Dated:   June 6, 2014                    **ALSTON & BIRD LLP**
                                              Louis A. Karasik
4                                             Rachel M. Capoccia
                                              Casondra K. Ruga
5

6                                             By: /s/ Louis A. Karasik
7                                                 _____
                                                  Louis A. Karasik
                                                  Attorneys for Defendant
8                                                 TWENTIETH CENTURY FOX FILM
                                                  CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Louis A. Karasik, declare:

I am employed in the County of Los Angeles, State of California. My business address is Alston & Bird LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On June 6, 2014, I served the document(s) described as follows: **DEFENDANT TWENTIETH CENTURY FOX FILM CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** on the interested parties in this action:

☐    BY MAIL:  I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, CA  90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm.  Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Alston & Bird LLP, 333 South Hope Street, Los Angeles, CA  90071.

☒    **BY ELECTRONIC SERVICE-CASE ANYWHERE**:  I transmitted via the internet, a true copy of the above-entitled document(s) to Case Anywhere at www.caseanywhere.com.  I caused the above-entitled document(s) to be sent to the recipients on the service list as maintained by Case Anywhere in this action.

☐    BY ELECTRONIC MAIL TRANSMISSION:  On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list.

☒    [Federal]     I declare under penalty of perjury that the above is true and correct.

Executed on June 6, 2014, at Los Angeles, California.

_/s/  Louis A. Karasik_
Louis A. Karasik