1

HON. CARL J.WEST RET.
JAMS
707 Wilshire Blvd.
46th Floor
Los Angeles, CA 90017
Tel: 213-620-1133
Fax: 213-620-0100

5

Referee

6

7

8

9

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAGDASARIAN PRODUCTIONS, LLC, a California limited liability company, and JANICE KARMAN, an individual, | Case No.:  CV102991MWF (JCGx) |
| Plaintiffs, | Referred under Cal. Code Civ. Proc. Section 638 to: |
| v. | Hon. Carl J. West (Ret.) |
| TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation, | JAMS Reference No. 1220044628 |
| Defendant. | [~~PROPOSED~~] STATEMENT OF DECISION |



Pursuant to the parties' June 13, 2012 Joint Stipulation for an Order for the Appointment of a Referee Under California Code of Civil Procedure §638 and the June 14, 2012 Order by the Honorable Michael W. Fitzgerald of the United States District Court thereon, the Honorable Carl J. West (Ret.) (hereinafter the "Referee") was appointed to hear and decide disputes and conduct this reference proceeding between Plaintiffs Bagdasarian Productions, LLC ("BPL") and Janice Karman ("Karman") (collectively "Plaintiffs") on the one hand, and Defendant Twentieth Century Fox Film Corporation ("Fox") on the other.  This Statement of Decision reflects the Referee's determinations, having heard and considered the parties' evidence and argument, and having previously considered various motions, applications and joint stipulations pertaining to the parties' disputes, and resolves all matters heard in this Reference proceeding.  This Statement of Decision will be filed with the District Court for entry of judgment thereon.

## PROCEDURAL BACKGROUND

1. **Plaintiffs' Complaint**

Plaintiffs filed their Complaint against Fox on April 21, 2010, asserting the following claims:  (1) Karman's claim for declaration of co-ownership of copyright and accounting of profits (Count I); (2) Karman's claim for copyright infringement (Count II); (3) Plaintiffs' claim for unjust enrichment based on Karman's asserted screenwriting services on *Alvin and the Chipmunks: The Squeakquel* ("*The Squeakquel*") (Count III); (4) Plaintiffs' claims for unjust enrichment based on Karman's asserted graphic design services on *The Squeakquel*  (Count IV); and (5) BPL's claim for alleged breach of contract and/or the covenant of good faith and fair dealing based on the "Purchase/Producer Agreement – Literary Material 'Alvin and the Chipmunks'" dated March 16, 2004 ("Agreement") (Count V) with respect to provisions involving (i) the "Purchase Price" and sequel compensation terms of paragraphs 6, 7 and 12 of the Agreement ("Purchase Price Claim"); (ii) "Picture-Related Merchandising" under paragraph 9 of the Agreement (the "Merchandising

1   Claim"); (iii) approval and consultation rights under paragraphs 15 and 16 of the

2   Agreement ("Approval Rights Claim"); and (iv) access and invitation to meetings

3   under paragraph 16 of the Agreement ("Access to Meetings Claim").

4         2.  **Plaintiffs' First Amended Complaint**

5         On August 10, 2012, Plaintiffs filed their First Amended Complaint ("FAC").

6   In the FAC, Karman added claims for breach of implied contract directed to asserted

7   writing services ("Writing Services Claim") (Count V) and asserted graphic design

8   services ("Graphic Design Services Claim") (Count VI).   BPL added claims to the

9   breach of contract/implied covenant claim (newly renamed Count VII) asserting

10   breaches involving (i) "Soundtrack Royalties" payable for the *Alvin and the*

11   *Chipmunks* ("*Alvin*") soundtrack album under paragraph 10 of the Agreement ("*Alvin*

12   Soundtrack Claim"); (ii) pay television distribution ("*Alvin* HBO Distribution Claim")

13   under paragraphs 5 and 10 of the Agreement and (iii) cable television distribution

14   ("FX Distribution Claim") under paragraphs 5 and 10 of the Agreement.

15         3.  **Fox's Motion to Dismiss Plaintiffs' First Amended Complaint**

16         On August 31, 2012, Fox filed its Motion to Dismiss Counts I through IV of the

17   FAC and the Purchase Price and Merchandising Claims alleged in Count VII.   In a

18   November 14, 2012 Ruling on Fox's Motion to Dismiss ("MTD Order"), the Referee

19   granted Fox's Motion to Dismiss as to Counts I through IV of the FAC and denied the

20   motion as to the remaining claims.   The MTD Order is attached as Exhibit 1 and

21   incorporated herein by reference.   Following dismissal of the federal claims, on

22   December 3, 2012, the Referee issued an Order on Parties' Proposed Further Orders

23   on Motion to Dismiss and Order Setting Further Status Conference in which the

24   Referee denied Plaintiffs' proposed dismissal of the supplemental state law claims.[1]

25

26

27   [1] The December 3, 2012 Order, attached hereto as Exhibit 2 and incorporated herein
     by reference, confirmed that the MTD Order would stand as the ruling of the Referee

28   on Fox's Motion to Dismiss.  December 3, 2012 Order at 2.

[~~PROPOSED~~] STATEMENT OF DECISION

4. **Fox's Answer and Counterclaim for Declaratory Relief**

On November 30, 2012, Fox filed its Answer and Counterclaim for Declaratory Relief. Fox's Counterclaim asserted that Plaintiffs had pursued trademark applications for "Squeakuel" marks, secured various domain names that incorporate "Squeakuel" as part of the domain name, and that Plaintiffs claimed a right to continue pursuing such marks and domains, allegedly in violation of rights held by Fox under the Agreement. On January 30, 2013, the Referee entered an Order on the parties' Joint Stipulation and Proposed Order on Fox's Counterclaim ("Order Dismissing Counterclaim"), attached as Exhibit 3 and incorporated herein by reference, based on Plaintiffs' agreement to abandon pursuit of the disputed trademarks, to transfer various marks and domain names to Fox, and to not pursue specified Alvin-related trademarks in the future.

5. **Plaintiffs' Motion for Leave to File Second Amended Complaint**

On July 9, 2013, Plaintiffs filed a Motion for Leave to Amend the First Amended Complaint. The proposed Second Amended Complaint withdrew the Merchandising Claim, FX Distribution Claim, Approval Rights Claim and Access to Meetings Claim. The proposed Second Amended Complaint added new allegations regarding the *Alvin* Soundtrack Claim, relying on Section VII(BB)(1) of Exhibit A of the Standard Terms & Conditions of the Agreement ("Section VII"). Plaintiffs also added allegations to the *Alvin* HBO Distribution Claim, relying on paragraph 7 of the Agreement and Section VII, and asserted this same breach of contract/breach of implied covenant theory with respect to Fox's distribution of *The Squeakquel* ("*The Squeakquel* HBO Distribution Claim*"). The proposed Second Amended Complaint also proposed claims for Soundtrack Royalties payable for *The Squeakquel* soundtrack album ("*Squeakquel* Soundtrack Claim"), referencing paragraph 10 of the Agreement and Section VII, and added proposed new claims for Rescission (Count VIII) and Unjust Enrichment (Count IX).

On September 9, 2013, the Referee granted in part and denied in part Plaintiffs'

[PROPOSED] STATEMENT OF DECISION

1  Motion for Leave to Amend the First Amended Complaint ("September 2013 Order"),

2  attached as Exhibit 4 and incorporated herein by reference)[2], permitting BPL to

3  proceed with the revised Soundtrack Claims for breach of contract (but not implied

4  covenant) and the proposed *Squeakquel* HBO Distribution Claim.[3]  The September

5  2013 Order denied leave to add claims in all other respects.

6        On June 28, 2013, Fox moved for Partial Summary Judgment respecting the

7  Purchase Price Claim and FX Distribution Claim.  The September 2013 Order denied

8  Fox's motion directed to the Purchase Price Claim.  With respect to the FX

9  Distribution Claim, because Plaintiffs indicated in their opposition that they were no

10  longer pursuing the claim, the Referee deferred a ruling on Fox's motion pending

11  documentation of Plaintiffs' withdrawal of the claim.

12        Consistent with the Referee's September 2013 Order, Plaintiffs filed their

13  Second Amended Complaint ("SAC") on September 23, 2013.  The SAC withdrew

14  and thereby dismissed the Merchandising Claim, Approval Rights Claim, the FX

15  Distribution Claim, and the Access to Meetings Claim, and added the new or revised

16  Soundtrack Claims for breach of contract and HBO Distribution Claims.

17        6.  **Parties' Cross Motions for Summary Judgment or Partial Summary**

18            **Judgment**

19        On November 8, 2013, the parties filed cross-motions for summary judgment.

20  BPL filed a motion for partial summary judgment directed to the HBO Distribution

21  Claims and the Soundtrack Claims.  Karman filed a motion for partial summary

22  judgment directed to the Writing Services Claim and the Graphic Design Services

23        

24  [2] The September 2013 Order is captioned Order (1) Granting in Part and Denying in Part Plaintiff Bagdasarian Productions Motion for Leave to Amend the First Amended

25  Complaint; and (2) Denying Defendant Twentieth Century Fox's Motion for Partial Summary Judgment.

26        

27  [3] The "Soundtrack Claims" refers collectively to the *Alvin* and *The Squeakquel* Soundtrack Claims and "HBO Distribution Claims" refers collectively to the *Alvin*

28  HBO Distribution Claim and *The Squeakquel* HBO Distribution Claim.

1   Claim. Fox filed a motion for summary judgment on each of these claims as well as

2   the Purchase Price Claim. On February 11, 2014 the Referee issued his order on the

3   parties' cross-motions ("Summary Judgment Order"), attached as Exhibit 5 and

4   incorporated herein by reference, denying Plaintiffs' motions, granting Fox's motion

5   on the Purchase Price Claim, the Soundtrack Claims, the HBO Distribution Claims

6   and Graphic Services Claim, and denying Fox's motion directed to the Writing

7   Services Claim. Fox's motion for summary judgment did not directly address that

8   portion of the *Alvin* Soundtrack Claim seeking recovery for a claimed underreporting

9   of units; that portion of BPL's *Alvin* Soundtrack Claim remained at issue following

10  the Summary Judgment Order.

11       7.   **Stipulation On Remaining Claims**

12       On April 8, 2014, the parties entered into a Stipulation to Undisputed Facts and

13  Request for Further Order on Cross-Motions for Summary Judgment relating to the

14  Writing Services Claim and the underreporting aspect of the *Alvin* Soundtrack Claim

15  by which they requested that the Referee enter a further order on the parties' cross-

16  motions for summary judgment (hereinafter "Stipulation on Remaining Claims"). On

17  April 14, 2014, based on the parties' Stipulation on Remaining Claims, the Referee

18  granted Fox summary judgment on the Writing Services Claim and on the

19  underreporting aspect of the *Alvin* Soundtrack Claim (hereinafter "Order Dismissing

20  Remaining Claims"). The Referee's Order Dismissing Remaining Claims is attached

21  as Exhibit 6 and incorporated herein by reference.

22              **DISMISSAL OF CLAIMS**

23       For the reasons reflected in the Referee's prior rulings and Orders, including the

24  above-referenced MTD Order, Order Dismissing Counterclaim, September 2013

25  Order, Summary Judgment Order and Order Dismissing Remaining Claims, and based

26  on the evidence, argument and pleadings in this matter, and good cause appearing, the

27  Referee's Statement of Decision in this matter is as follows:

28       1.   Karman's claims for declaration of co-ownership of copyright and

accounting of profits (Count I); (2) copyright infringement (Count II); (3) unjust enrichment (Count III) and unjust enrichment (Count IV) are dismissed with prejudice.

2.      BPL's claims in Count VII consisting of the Purchase Price Claim, Soundtrack Claims and HBO Distribution Claims (together with any claims for breach of implied covenant related to these issues) are dismissed with prejudice.

3.      BPL's abandoned Count VII claims consisting of the Merchandising Claim, FX Distribution Claim, Approval Rights Claim and Access to Meetings Claims are dismissed with prejudice.

4.      Karman's Graphic Services Claim (Count VI) is dismissed with prejudice.

5.      Fox's Counterclaim for Declaratory Relief is dismissed with prejudice, subject to the matters specified in the Referee's Order Dismissing Counterclaim.

6.      Karman's claim for Writing Services (Count V) and that portion of BPL's *Alvin* Soundtrack Claim directed to the alleged underreporting of units (Count VII) are dismissed with prejudice on the basis specified in the Order Dismissing Remaining Claims.

7.      The Referee incorporates into this Statement of Decision all prior orders and rulings (including those made through postings on the JAMS message board system) involving scheduling, discovery and all other decisions by the Referee in connection with the above-referenced litigation.

8.      This Statement of Decision resolves all matters heard in this Reference proceeding.

IT IS SO ORDERED:

DATED: **7-16-14**

Honorable Carl J. West

6

# EXHIBIT 1

1 | HON. CARL J. WEST, RET.
JAMS
2 | 707 Wilshire Blvd.
46th Floor
3 | Los Angeles, CA 90017
Tel: 213-620-1133
4 | Fax: 213-620-0100

5

6 | Referee

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

12 | BAGDASARIAN PRODUCTIONS, LLC,     )   Case No. CV 10-02991 MWF (JCGx)
13 | and JANICE KARMAN,                )
                                      )   JAMS Reference # 1220044628
14 |            Plaintiffs,            )
                                      )
15 | vs.                              )
                                      )   **RULING ON MOTION TO DISMISS**
16 |                                   )
TWENTIETH CENTURY FOX FILE            )
17 | CORPORATION,                      )
                                      )
18 |            Defendants.            )
                                      )
19 |                                   )

20

21 | Defendant's Motion to Dismiss was filed on August 31, 2012. Plaintiffs' Opposition to the

22 | Motion to Dismiss was filed on September 26, 2012. Defendant's Reply to the Opposition was

23 | filed on October 5, 2012. A hearing on the Motion was held on October 31, 2012. The Referee

24 | has read and considered the parties' briefs and has considered the argument of counsel at the

25 | hearing. The Referee makes the following Order on the Motion.

26

27 | ////

28 | ////

1

1   Motion is granted as to Counts I through IV.  The express terms of the "Purchase/Producer

2   Agreement-Literary Materials" dated March 26, 2004 are dispositive of the claims asserted in

3   these Counts.  The Agreement defines "Property" as follows:

4

5

6   "That certain pre-existing property generally known as "Alvin and

7   the Chipmunks" a.k.a. "Chipmunks" a.k.a. "Chipmunks Go to the

8   Movies," "Alvin and the Chipmunks Series," "The Alvin Show,"

9   including various television series produced commencing in 1961,

10   1983 through 1987, and 1988 through 1991, created and/or

11   controlled by Ross-Bagdasarian, Sr., Ross Bagdasarian, Jr., Janice

12

13   Karman, Bagdasarian Productions, LLC, *and any and all*

14   *associated characters* (including Simon, Theodore, Alvin, and

15   David Seville) *now or hereafter created and to the extent owned*

16   *and/or controlled by Owner, and any and all other plots, themes,*

17   *titles, story lines, names related thereto, and any and all other*

18   *elements relating to any of the foregoing, now existing or created*

19   *hereafter.* (Agreement, ¶1(a) (emphasis added).)

20

21

22   When this language is considered in conjunction with the language contained in the Standard

23   Terms and Conditions there is no question that the screenplay and graphic designs are literary

24   material within the meaning of Property as defined in the Agreement.  Plaintiffs have failed to

25   explain how the screenplay and graphics produced by Ms. Karmen do not come within the

26   language of ¶1(a) that embraces "…any and all other elements relating to any of the foregoing,

27   now existing or created hereafter." The Standard Terms and Conditions include the following:

28

2

Case 2:10-cv-02991-MWF-JCG   Document 54   Filed 11/15/12   Page 3 of 5   Page ID #:1056

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"[t]he sole and exclusive right . . . to use all of the elements

contained in the Property . . . to adapt, rearrange and make any

changes in, deletions from or additions to the Property, to change

the sequence thereof, to use a portion or portions of the Property . .

. to change the characters in the Property, to change the

descriptions of said characters, and to use all or any part of the

foregoing in new versions, adaptions, other motion pictures,

Remakes and Sequels (including Additional Motion Picture,

Author Written Sequel Motion Pictures, Studio Sequel Motion

Pictures and Remakes). . . .

(Agreement, ST&C, ¶6(b).)

The work performed by Ms. Karman constitutes "all or any part of the foregoing in new

versions, adaptions, other motion pictures, Remakes and Sequels" and as such are subject to the

Agreement. The screenplay for which Ms. Karman seeks compensation, while within the

definition of Literary Material (STC §26(i)), is an element of the Property subject to the

Agreement. Plaintiffs' suggestion that the screenplay and graphic designs are outside the

Agreement would defeat the purpose and intent of the Agreement.  Literary Material as defined

in the Standard Terms and Conditions is within the definition of Property to the extent it consists

of "*and any and all other plots, themes, titles, story lines, names related thereto, and any and all

other elements relating to any of the foregoing, now existing or created hereafter.*"

This is further confirmed by the fact that Ms. Karman's co-ownership claim to *The Squeakquel*

screenplay as alleged at §33 of the First Amended Complaint is inconsistent with in direct

3

Case 2:10-cv-02991-MWF-JCG   Document 54   Filed 11/15/12   Page 4 of 5   Page ID #:1057

1  contravention of the grant of rights contained in the parties' Agreement. STC §§ 6(f), 9, 15, and

2  24.

3

4

5  The motion is denied as to Counts V, VI, and VII. The implied contract and breach of contract

6  claims cannot be adjudicated on a motion to dismiss as there are factual issues raised by the

7  pleading.  Notwithstanding the denial of the motion as to Count VII, it appears that Plaintiffs'

8  claims for failure to merchandise and for additional compensation for the sequels (and the

9  original film) will be precluded by the express terms of the Agreement.  Specifically, the fact that

10 merchandising was within the sole discretion of Fox will likely preclude any recovery on this

11 claim. See *Third Story Music, Inc. v. Waits* 41 Cal.App.4th 798 (1996) and *Wolf v. Walt Disney*

12 *Picture and Television*, 162 Cal.App.4th 1107, 1112 (2008).  With respect to the claim for

13

14 additional compensation for sequels, under the Agreement the terms of Paragraphs 6 and 7

15 appear to preclude Plaintiffs' claims. The parties' course of dealing over several years, and in

16 connection with the earlier sequel and original will provide an evidentiary basis for

17 determination of this claim as well as the merchandising claim.

18

19

20 The parties are ordered to meet and confer regarding the form of an appropriate order

21 implementing the Referee's ruling on Defendant's Motion to Dismiss.  If the parties are in

22 agreement as to the form of order, the order is to be submitted approved as to form by both

23 counsel; in the absence of agreement, Defendant is directed to submit a proposed order.  The

24 agreed or proposed order is to be submitted on or before November 30, 2012.

25

26 Dated: November 14, 2012

27

28                                          CARL J. WEST
                                            Judge of the Superior Court (Ret.)
                                            Referee

4

12

Case 2:10-cv-02991-MWF-JCG   Document 54   Filed 11/15/12   Page 5 of 5   Page ID #:1058

## PROOF OF SERVICE BY U.S. MAIL

Re: Bagdasarian Productions LLC et al. vs. Twentieth Century Fox Film Corporation
Reference No. 1220044628

I, Jo-El Fequiere, not a party to the within action, hereby declare that on  November 14, 2012 I served the attached RULING ON MOTION TO DISMISS on the parties in the within action by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, Los Angeles, CALIFORNIA, addressed as follows:

Hon. Michael W. Fitzgerald
U.S. District Court
312 N. Spring St.
#G-8
Los Angeles, CA   90012-4793

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles, CALIFORNIA, on  November 14, 2012.

Jo-El Fequiere

13

# EXHIBIT 2

1   HON. CARL J. WEST, RET.
    JAMS
2   707 Wilshire Blvd.
    46ᵗʰ Floor
3   Los Angeles, CA 90017
    Tel: 213-620-1133
4   Fax: 213-620-0100

5

6   Referee

7

8                        UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11

12  BAGDASARIAN PRODUCTIONS, LLC,      )    Case No. CV 10-02991 MWF (JCGx)
    and JANICE KARMAN,                  )
13                                      )    JAMS Reference # 1220044628
                                        )
14              Plaintiffs,             )
                                        )
15  vs.                                 )    **Order on Parties' Proposed Further Orders**
                                        )    **on Motion to Dismiss**
16  TWENTIETH CENTURY FOX FILE          )
17  CORPORATION,                        )    **Order Setting Further Status Conference**
                                        )
18              Defendants.             )
                                        )
19  _____)

20

21  The Referee has read the Proposed Order on Motion to Dismiss submitted by Fox, Mr. Karasik's

22  letter that accompanied the submission of the proposed order, and the Plaintiffs' Proposed Order

23  and Objections to Fox's Proposed Order.  The request in the Referee's Ruling on Motion to

24  Dismiss for a proposed order implementing the Ruling was not intended as a request for Fox to

25  rewrite the ruling, but rather a request for an order that would facilitate review of the ruling as

26  discussed at the hearing.  The Referee is not inclined to dismiss the supplemental state law

27  claims as proposed by Plaintiffs. 28 U.S.C 1367(c) vests the District Court, and thus the Referee

28

1

15

1  with discretion to retain jurisdiction over supplemental state law claims following dismissal of

2  federal claims. The exercise of that discretion is founded on considerations of judicial economy,

3  fairness, convenience, comity, and efficiency.  The judicial reference in this case was made

4  pursuant to the parties' agreement that disputes would be resolved through such a reference made

5  pursuant to California Code of Civil Procedure §638.  Dismissal of the state law claims, and the

6  refilling of the claims in state court, as proposed by Plaintiffs, would frustrate the economies and

7  efficiencies of the §638 reference procedure adopted by the parties for resolution of any disputes

8  arising under the Purchase/Producer Agreement.  The Referee will allow the Ruling on the

9  Motion to Dismiss to stand and will forego any further order on the motion in the absence of a

10 jointly proposed order intended by the parties to facilitate review of the Ruling.  The parties

11 should meet and confer for the purpose of addressing discovery and scheduling issues. A Further

12 Status Conference will be held on January 11, 2013 at 9:00 a.m. at the JAMS Los Angeles office.

13 The parties are to file a joint statement addressing discovery and scheduling issues on or before

14 January 4, 2013.

15 Dated: December 3, 2012

16

17

18

19                                                   CARL J. WEST
                                                     Judge of the Superior Court (Ret.)
20                                                   Referee

21

22

23

24

25

26

27

28

                                                 2

                                                                                            16

## PROOF OF SERVICE BY U.S. MAIL

Re: Bagdasarian Productions LLC et al. vs. Twentieth Century Fox Film Corporation
Reference No. 1220044628

I, Kathryn Cisneros, not a party to the within action, hereby declare that on December 04, 2012 I served the attached ORDER ON PARTIES' PROPOSED FURTHER ORDERS ON MOTION TO DISMISS AND ORDER SETTING FURTHER STATUS CONFERENCE in the within action by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, Los Angeles, CALIFORNIA, addressed as follows:

Hon. Michael Fitzgerald
U.S. District Court
312 N. Spring St., # G-8
Los Angeles, CA   90012-4793

I declare under penalty of perjury the foregoing to be true and correct. Executed in Los Angeles, CALIFORNIA, on December 04, 2012.

Kathryn Cisneros

17

# EXHIBIT 3

1 | Steven A. Marenberg (101033) (smarenberg@irell.com)
2 | Melissa R. McCormick (180384) (mmccormick@irell.com)
  | Douglas J. Dixon (275389) (ddixon@irell.com)
3 | IRELL & MANELLA LLP
  | 1800 Avenue of the Stars, Suite 900
4 | Los Angeles, California 90067-4276
5 | Telephone:   (310) 277-1010

6 | Attorneys for Plaintiffs

7 | Louis A. Karasik (100672) (lou.karasik@alston.com)
8 | Rachel M. Capoccia (187160) (rachel.capoccia@alston.com)
  | Casondra K. Ruga (237597) (casondra.ruga@alston.com)
9 | ALSTON & BIRD LLP
  | 333 South Hope Street, 16th Floor
10 | Los Angeles, California 90071
11 | Telephone: (213) 576-1000

12 | Attorneys for Defendant

13 |

FILED
CLERK, U.S. DISTRICT COURT

FEB 1 3 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| BAGDASARIAN PRODUCTIONS, LLC, a California limited liability company, and JANICE KARMAN, an individual, | ) Case No. CV-10-02991 MWF ) ) Referred under Cal. Code Civ. Proc. ) Section 638 to: ) |
|     Plaintiffs, | ) Hon. Carl J. West (Ret.) ) |
|     v. | ) JAMS Reference No. 1220044628 ) |
| TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation, | ) **JOINT STIPULATION AND** ) **PROPOSED ORDER ON FOX'S** ) **COUNTERCLAIM** ) |
|     Defendant. | ) ) |

Case 2:10-cv-02991-MWF-JCG   Document 179   Filed 07/17/14   Page 23 of 40   Page ID
#:9120
Case 2:10-cv-02991-MWF-JCG   Document 66   Filed 02/13/13   Page 2 of 5   Page ID #:1297

1    WHEREAS, Bagdasarian Productions, LLC ("Bagdasarian Productions")

2  filed trademark applications bearing Serial Nos. 77648701, 77648706, 77648711,

3  77648720, and 77648723 with the United States Patent and Trademark Office

4  ("PTO") concerning the mark "Squeakuel" on January 13, 2009, and trademark

5  Application No. 1,425,607 with the Canadian Intellectual Property Office

6  concerning the mark "Squeakuel" on January 26, 2009 (collectively, "Trademark

7  Applications");

8    WHEREAS, Bagdasarian Productions registered the domain names

9  "squeakuel.com", "squeakuel.net", "squeakuel.org", "thesqueakuel.com",

10  "thesqueakuel.net", and "thesqueakuel.org" on or about December 22, 2008

11  ("Domain Names");

12    WHEREAS, Twentieth Century Fox Film Corporation ("Fox") filed a

13  Counterclaim for Declaratory Relief in the above-captioned matter on November 30,

14  2012 ("Counterclaim"), alleging, among other things, that Fox has the sole and

15  exclusive right to register and use the mark "Squeakuel" (or any variation thereof)

16  and to secure domain names that bear the name "Squeakquel" (or any variation

17  thereof);

18    WHEREAS, Fox's Counterclaim seeks declaratory relief in the form, *inter*

19  *alia*, of an order requiring Bagdasarian to cancel or abandon the Trademark

20  Applications and to transfer or assign the Domain Names to Fox;

21    WHEREAS, Bagdasarian Productions withdrew trademark Application

22  No. 1,425,607 in the Canadian Intellectual Property Office on December 6, 2012;

23    WHEREAS, Bagdasarian Productions abandoned the trademark applications

24  with Serial Nos. 77648701, 77648706, 77648711, 77648720, and 77648723 in the

25  PTO on December 5, 2012;

26    WHEREAS, Bagdasarian Productions has offered to transfer any interest it

27  may have in the Domain Names to Fox;

28

JOINT STIPULATION AND
PROPOSED ORDER ON FOX'S
COUNTERCLAIM

2736320.1            - 1 -

1       WHEREAS, Bagdasarian Productions represents that it has not prosecuted

2  and is not aware of any other trademark application pending in any jurisdiction

3  worldwide concerning the mark "Squeakuel" (or any variant thereof) or the mark

4  "Chipwrecked" (or any variant thereof) in which Bagdasarian Productions or any of

5  its principals may have an interest; and

6       WHEREAS, Bagdasarian Productions represents that neither it nor its

7  principals have registered any other domain names bearing the name "Squeakuel"

8  (or any variant thereof) or "Chipwrecked" (or any variant thereof) in which

9  Bagdasarian Productions or any of its principals may have an interest;

10       NOW THEREFORE THE PARTIES HEREBY STIPULATE AND AGREE:

11       1.    Absent Fox's express written consent, Bagdasarian Productions shall

12  not use or pursue any trademark or domain registrations in any jurisdiction

13  worldwide based upon the title to the picture "Alvin and the Chipmunks:  The

14  Squeakquel" or any phonetic variant, including "Squeakuel", or the title of the

15  picture "Chipwrecked" or any phonetic variant;

16       2.    Bagdasarian Productions shall assign to Fox, for no additional

17  consideration, any right, title or interest Bagdasarian Productions may have to the

18  domain names "squeakuel.com", "squeakuel.net", "squeakuel.org",

19  "thesqueakuel.com", "thesqueakuel.net", and "thesqueakuel.org";

20       3.    Fox shall dismiss its counterclaim filed on November 30, 2012,

21  without prejudice; and

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1        4.    The proposed Order, if adopted by the Referee, shall in turn be

2    submitted for entry by the Honorable Michael W. Fitzpatrick and shall take effect

3    only upon entry by Judge Fitzpatrick.

4        SO STIPULATED

5    Dated: January ___28___, 2013       Respectfully submitted,

6                          IRELL & MANELLA LLP

7                          Steven A. Marenberg

8                          Melissa R. McCormick

9                          Douglas J. Dixon

10

11                         By: _____

12                             Steven A. Marenberg

13                         Attorneys for Plaintiffs

14

15   Dated: January ___29___, 2013       Respectfully submitted,

16

17                         ALSTON & BIRD LLP

18                         Louis A. Karasik

19                         Rachel M. Capoccia

20                         Casondra K. Ruga

21                         By: _____

22                             Louis A. Karasik

23                         Attorneys for Defendant

24       SO ORDERED

25   Dated: January ___30___, 2013

26                         Carl J. West

27                         Judge of the Superior Court (Ret.)

28                         Referee

2736320.1                - 3 -              JOINT STIPULATION AND
                                         PROPOSED ORDER ON FOX'S
                                         COUNTERCLAIM

1    SO ORDERED

2    Dated: ~~January~~ 13 , 2013

3                      Hon. Michael W. Fitzgerald

4                      United States District Court Judge

5                      Central District of California

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2736320.1

- 4 -

JOINT STIPULATION AND
PROPOSED ORDER ON FOX'S
COUNTERCLAIM

# EXHIBIT 4

1  HON. CARL J. WEST, RET.
2  JAMS
   707 Wilshire Blvd.
3  46th Floor
   Los Angeles, CA 90017
4  Tel: 213-620-1133
   Fax: 213-620-0100
5
6  Referee
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10                         WESTERN DIVISION
11

12  BAGDASARIAN PRODUCTIONS, LLC, a   )  Case No. CV 10-02991 MWF (JCGx)
    California limited liability company, and  )
13  JANICE KARMA, an individual,      )  JAMS Reference #1220044628
                                      )
14               Plaintiffs,          )  ORDER
                                      )
15                                    )  (1) GRANTING IN PART AND DENYING
         v.                           )  IN PART PLAINTIFF BAGDASARIAN
16                                    )  PRODUCTION'S MOTION FOR LEAVE TO
                                      )  AMEND THE FIRST AMENDED
17  TWENTIETH CENTURY FOX FILM        )  COMPLAINT
18  CORPORATION, a Delaware corporation,  )
                                      )  (2) DENYING DEFENDANT TWENTIETH
19               Defendant.           )  CENTURY FOX'S MOTION FOR PARTIAL
                                      )  SUMMARY JUDGMENT
20                                    )
21
22  __PLAINTIFF BAGDASARIAN PRODUCTION'S MOTION FOR LEAVE TO AMEND__
23                 __THE FIRST AMENDED COMPLAINT__
24
25                         Introduction
26      Plaintiffs Bagdasarian Productions, LLC and Janice Karman brought an action against
27  Defendant Twentieth Century Fox Film Corporation in the United States District Court for the
28  Central District of California.  On June 14, 2012, this action was referred under Cal. Code Civ.

                                   1

1  Proc. §638 to the undersigned referee ("Referee").  Subsequently, Plaintiffs filed a First

2  Amended Complaint for Declaration of Copyright of Co-Ownership of Copyright and

3  Accounting for Profits, Copyright Infringement, Unjust Enrichment, Breach of Implied Contract,

4  and Breach of Contract.  Currently before this Referee is Plaintiff Bagdasarian Productions,

5  LLC's Motion for Leave to Amend the First Amended Complaint.

6

7                                          Background

8        The following facts are alleged in the First Amended Complaint ("FAC"):

9        Plaintiff Bagdasarian Productions, LLC ("Bagdasarian"), a company owned and run by

10  Ross Bagdasarian, Jr. and his wife Janice Karman ("Karman"), is the owner and licensor of the

11  properties known as Alvin and the Chipmunks.  (FAC ¶2.)  In 2004, Twentieth Century Fox

12  Film Corporation ("Fox") and Bagdasarian entered into a Purchase/Producer Agreement

13  ("Producer Agreement"), pursuant to which Bagdasarian granted Fox an option for the right to

14  develop, produce and distribute motion pictures based on the underlying Alvin and the

15  Chipmunks properties.  (Id.)  The first film produced under the Producer Agreement, Alvin and

16  the Chipmunks ("Alvin I"), was released in 2007.  (Id.)

17        Following the success of the first film, Fox and Bagdasarian began work on The

18  Squeakquel, in early 2008.  (Id. at ¶3.)  In March 2008, Karman wrote the 33-page treatment for

19  The Squeakquel screenplay.  (Id.)  In connection with the development of The Squeakquel

20  screenplay, over the course of almost one year, Karman created numerous original treatments,

21  draft screenplays, scenes and dialogue.  (Id.)  Karman's screenplay writings constitute a

22  substantial portion of The Squeakquel's final screenplay.  (Id.)

23        To date, Fox has refused to account to Karman as co-owner of The Squeakquel

24  screenplay, or, in the alternative, as the owner of her substantial copyrighted contributions used

25  by Fox, without authorization, in The Squeakquel screenplay.  (Id. at ¶4.)  Further, Fox has

26  separately and repeatedly breached the Producer Agreement between Fox and Bagdasarian.  (Id.)

27  Consequently, Karman and Bagdasarian seek relief in this action.  (Id.)

28  ////

26

The Claims Sought to be Added

In its Motion for Leave to Amend, Bagdasarian seeks leave to amend its FAC to add two contract-related claims for underpayment of compensation due to Bagdasarian from Fox on the soundtrack to the film Alvin and the Chipmunks:  The Squeakquel ("The Squeakquel") and on the licensing of the picture to HBO, both in violation of the Producer Agreement between the parties, as well as a claim for rescission under California Civil Code § 1689(b).  Bagdasarian contends that it has met the liberal standards under Federal Rule of Civil Procedure 15 because the claims sought to be added are either identical to or closely related to claims already in the case.  It further contends that it is beneficial to litigate all claims now rather than in a separate proceeding.

Federal Rule of Civil Procedure 15(a) states in pertinent part that A[a] party may amend the party=s pleading once as a matter of course . . . .  Otherwise a party may amend the party=s pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.@  Fed. R. Civ. P. 15(a).  This policy is to be applied with Aextreme liberality.@  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (citing United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)); see also Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

The United States Supreme Court stated that while it is in the court's discretion to grant or deny an opportunity to amend, a court's outright refusal to grant leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion . . . it is merely an abuse of that discretion.  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  Reasons which may justify denial include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, prejudice to the opposing party, and futility of the amendment.  See id.; see also DCD Programs, Ltd., 833 F.2d at 186.  "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  Eminence Capital , LLC v. Aspeon, Inc., 316 F.3d1048, 1052 (9th Cir. 2003).

<u>Leave to Amend to Add the Contract Claim for Underpayment of</u>

<u>Soundtrack Royalties on The Squeakquel Is Warranted</u>

Bagdasarian seeks to add a claim for underpayment of royalties relating to The

Squeakquel soundtrack.  In the FAC, it already alleges that Fox has underpaid royalties relating

to the soundtrack to Alvin I.[1]  In the proposed Second Amended Complaint ("SAC"),

Bagdasarian alleges that for sales of The Squeakquel soundtrack, as the basis for calculating

royalties, Fox had calculated Bagdasarian's royalty upon the wholesale price of the album of

$12.05 (called the "Purchase Price to Dealer" or "PPD") rather than the SRLP.  Bagdasarian

contends that Fox also reduced the royalty payable to it by 25% when computing the royalty due

Bagdasarian on album sales in Canada.

In its Opposition, Fox asserts that The Squeakquel soundtrack claim is futile because

Bagdasarian agreed that such claims could only be brought against Rhino records.  Relying on

the Producer Agreement, Fox states that where Fox obtains a written agreement with the record

company to pay and account for soundtrack royalties directly to Bagdasarian, "Fox shall be

relieved" of those obligations and Bagdasarian "shall look solely to the Record Company for

such royalties."  (Agreement, ¶10(e)).  Fox states that it entered into such agreement with Rhino

in August 2009, and only Rhino pays and accounts to Bagdasarian for its royalties.

In response, Bagdasarian points to the entire language of Paragraph 10(e) of the Producer

Agreement, which provides:

> Fox agrees to use its reasonable efforts to cause the Record
> Company to account for and pay the Soundtrack Royalty directly
> to Owner hereunder (unless such Record Company does not
> ordinarily render direct third party accountings), and if Record
> Company agrees in writing to Owner to so account, Fox shall be
> relieved of such obligations and Owner shall look solely to Record
> Company for such record royalties.

(Producer Agreement, ¶10(e).)  According to Bagdasarian, Rhino did not agree "to account for

and pay the Soundtrack Royalty directly" to it.  As a result, Fox is not "relieved" of its

obligations to account to Bagdasarian for the payment of royalties.

---

[1] Specifically, Bagdasarian alleges that Fox underpaid royalties on the sales of the Alvin I soundtrack by
basing the royalty upon an amount other than the full SRLP (suggested retail list price).

1    Given the parties' contentions, the Referee finds that alleging this claim is not futile.

2    Under Rule 15, a claim is futile if no set of facts can be proved under the amendment to the

3    pleadings that would constitute a valid and sufficient claim. Miller v. Rykoff-Sexton, Inc., 845

4    F.2d 209, 214 (9th Cir. 1998). In the proposed SAC, Bagdasarian contends:

> Fox deprived Bagdasarian Productions of substantial royalties on
> sales of The Squeakquel soundtrack by calculating Bagdasarian
> Productions' royalty based upon the wholesale price of the album
> (called, in record industry parlance, the "Purchase Price to Dealer"
> or "PPD") rather than the full SRLP. Moreover, Fox also reduced
> the royalty by 25% when computing the royalty due Bagdasarian
> Productions on album sales of The Squeakquel soundtrack in
> Canada. Neither is permitted by the Producer Agreement.

10   (Proposed SAC ¶43.) In arguing that this claim is futile, Fox goes beyond what is plead, relying

11   on an agreement it claims was entered with Rhino, and further, Bagdasarian alleges that in this

12   agreement, Fox permitted Rhino to account to Bagdasarian for royalty amounts less than the

13   Soundtrack Royalty – one that is calculated based upon the wholesale price of The Squeakquel

14   album rather than the SRLP. Thus, leave to amend is warranted.

15       Fox asserts that even if the soundtrack claim is not futile, the delay in asserting them

16   requires that leave to amend be denied. It contends that Bagdasarian was aware in May 2009

17   that Fox was negotiating an agreement with Rhino under which Bagdasarian's royalties were

18   subject to percentage rate deductions for various territories and that PPD accounting was

19   applicable, yet Bagdasarian did not sue for the claimed breach in the original complaint (April

20   2010) or the FAC (August 2012) and now raises the issue for the first time over four years later

21   without reasonable excuse. Fox argues that this delay plainly prejudices it because it will be

22   required to obtain evidence in the custody and control of Rhino records.

23       The Referee finds no undue delay or prejudice to Fox. Bagdasarian states that it only

24   recently learned of the facts underlying The Squeakquel royalties claim following Fox's

25   production of documents relating to the calculation and payment of those royalties. Specifically,

26   it states that on December 27, 2012, it served a Second Set of RFPs which sought Fox's

27   soundtrack agreements with the record distributors for The Squeakquel and Chipwrecked

28   soundtracks as well as other documents related to Fox's calculation and payment of soundtrack

royalties on sales of those soundtracks. Bagdasarian states that while Fox produced its

29

1    agreements with the record distributors, it failed to produce other documents relating to its

2    calculation and payment of royalties until Bagdasarian complained on April 26, 2013.

3    Subsequently, Bagdasarian sought a stipulation from Fox to allow it to file a second amended

4    complaint containing a claim for the underpayment of royalties on sales of The Squeakquel

5    soundtrack.  Furthermore, "[u]ndue delay by itself . . . is insufficient to justify denying a motion

6    to amend." Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999).  Fox would still need to

7    show undue prejudice, and its bare claim that it would need to seek discovery from Rhino

8    records is insufficient.  As Bagdasarian points out, Fox can seek such evidence over the next two

9    and a half months before fact discovery closes on October 18, 2013.  In addition, as stated above,

10   a similar claim relating to the royalties for the Alvin I soundtrack already exists in this case. [2]

11   Thus, Bagdasarian is granted leave to amend to add a contract claim based on the royalties on the

12   sales for The Squeakquel soundtrack.

13

14                    Leave to Amend to Add Claim for Breach of Implied Covenant of

15                             Good Faith and Fair Dealing Is Not Warranted

16            In Count VII (Breach of Contract) of the proposed SAC, Bagdasarian contends that the

17   underpayment of soundtrack royalties also constitutes a breach of the implied covenant of good

18   faith and fair dealing.  (SAC at ¶75.)  In its current Motion, Bagdasarian argues that if Fox is

19   correct that it is permitted to reduce all soundtrack royalties to Bagdasarian in accordance with

20   the provisions of the distribution agreements with the soundtracks' distributors, then Fox, when

21   negotiating and then later using these third-party agreements as a basis to reduce Bagdasarian's

22   royalties, breached either Section VII (BB)(1) of Exhibit A of the Standard Terms and

23   Conditions to the Agreement, which prohibits Fox from exercising its business judgment on a

24   discriminatory basis, or the implied covenant of good faith and fair dealing, which prohibits Fox

25   from engaging in conduct that frustrates Bagdasarian's rights of the benefits of the contract, or

26

27   _____

28   [2] The Referee notes that in its Opposition to this Motion, Fox argues that the Alvin I soundtrack claims are time barred.  However, such argument on this claim, which was first plead in the FAC, is not properly brought before the Referee on this Motion for Leave to Amend.

both.  Fox asserts that Bagdasarian's proposed implied covenant soundtrack claims are futile because they cannot, as a matter of law, be based on the same facts as a breach of contract claim.

Fox is correct that an implied covenant cannot be read into a contract that has express terms governing the parties' conduct.  "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into the contract to prohibit a party from doing that which is expressly permitted by the agreement itself."  Wolf v. Walt Disney Picture and Television, 162 Cal. App. 4th 1107, 1120 (2008).  Accordingly, leave to amend to assert this claim is not warranted.

<u>Leave to Amend to Add Breach of Contract Claim For Discrimination</u>
<u>in Licensing The Squeakquel to HBO Is Warranted</u>

Bagdasarian alleges that through discovery, it has learned that Fox allowed The Squeakquel to be licensed to HBO under the HBO output arrangement of its co-financing partner, Regency, for less money than Fox and Bagdasarian would have received had the film been licensed to HBO under Fox's own HBO output arrangement.[3]  (SAC ¶ 40.)  It alleges that Fox accepted less money for the lucrative HBO license in exchange for benefits from Regency to Fox that were not shared with Bagdasarian in violation of the Agreement's requirement that Fox exercise its business judgment in a "reasonable and non-discriminatory manner."  (Id.)

In its Opposition, Fox argues that this proposed claim is futile.  Specifically, Fox argues that "non-discriminatory" means disparate treatment of similarly situated persons, and here, the assertion that Fox was "discriminatory" is particularly impossible because all profit participants for The Squeakquel had diminished revenue from HBO as a result of the co-financing of the pictures with New Regency, and so did Fox.[4]

---

[3] Bagdasarian asserted a claim in the FAC alleging that Fox breached the Producer Agreement by allowing Alvin I to be licensed to HBO under the terms of the HBO output arrangement of its co-financing partner, Regency, for less money than Fox and Bagdasarian would have received had the film been licensed to HBO under Fox's own HBO output arrangement.

[4] Fox also asserts this argument with respect to the claim based on Alvin I as alleged in the FAC, but this claim is not at issue here in this Motion for Leave to Amend.

1    The Referee finds that Bagdasarian's contract claim based on the licensing to HBO does
2    not fail to state a claim, and as such, is not futile.  Rather, based on Fox's arguments, resolution
3    of this claim will depend on the interpretation and application of the Agreement's language that
4    "Fox exercise its business judgment in a 'reasonable and non-discriminatory manner.'"  Thus,
5    the Referee finds that leave to amend to add this claim is warranted.

6

7                    <u>Leave to Amend to Add a Claim for Rescission Is Not Warranted</u>
8          Bagdasarian contends that discovery conducted to date suggests that the parties may not
9    have had a meeting of the minds on the conditions under which Fox had the right to produce
10   sequels.  Specifically, according to Bagdasarian, discovery shows:
11   • Bagdasarian always sought more money for sequels than it would receive for the first
12      picture and Fox always wanted to pay less or, at most, the same amount it paid for the
13      first picture than for sequels;
14   • The parties' course of performance and course of dealing with one another indicates that
15      for each of the two sequels, Fox took the position that the $3million payment was
16      recoupable against contingent compensation, and on each occasion, Bagdasarian objected
17      to Fox's accounting treatment;
18   • Fox contends that it never agreed, nor would it have agreed, to pay Bagdasarian more
19      money for sequels than Fox paid for the first picture; and
20   • Bagdasarian did not agree, nor would it have agreed, to execute any deal that did not
21      provide more for sequels than for the first picture and understood the pertinent provisions
22      to require Fox to pay $3 million and 2.5% of Gross Proceeds for sequels.
23         As such, Bagdasarian asserts that if its interpretation of the Producer Agreement is not
24   accepted by the trier of fact, then there was a mutual mistake as to the conditions under which
25   Fox could produce sequels to Alvin I under the Producer Agreement, rendering the Producer
26   Agreement rescindable due to mutual mistake, and it seeks to add this cause of action as an
27   alternative theory of recovery to the breach of contract claim.
28         In its Opposition, Fox argues, among other things, that Bagdasarian's purported unilateral
     misinterpretation of contract terms is not a basis for rescission.  It relies on <u>Hedging Concepts,</u>

32

1    Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410 (1996). The Referee agrees that

2    Hedging Concepts is instructive here. In Hedging Concepts, the appellate court reversed the trial

3    court's rescission of a contract. Id. at 1422. It found that the parties' differing subjective

4    understandings of the contract does not constitute a "mistake" for rescission purposes. Id. at

5    1421. It stated:

> There are two reasons courts will not set aside contracts for mere
> subjective misinterpretation. First, to declare rescission based
> upon mistaken undisclosed subjective interpretation would conflict
> with the objective theory of enforceable contracts. If this were the
> law, the objective theory of contracts would give with one hand,
> while the subjective misunderstanding theory of rescission would
> take away with the other. This is not the law. Second, a unilateral
> misinterpretation of contractual terms, without knowledge by the
> other party at the time of contract, does not constitute a mistake
> under either Civil Code section 1577 or 1578. See, generally, 1
> Witkin, Summary of California Law (9th ed. 1987) Contracts,
> section 379, pages 345-346.

13    Id. at 1422.

14       Bagdasarian claims that since the Referee has already held that the disputed provisions

15    are susceptible to multiple interpretations, Fox's unilateral misunderstanding arguments fails. It

16    argues that a mutual mistake forms the basis of its rescission claim, not its "unilateral

17    misinterpretation." This is the same situation addressed by the court in Hedging Concepts:

18    when the parties have differing subjective understandings of the contract. As found by that

19    court, this does not constitute a "mistake" for purposes of Civil Code §1689. Id. at 1421, 22.

20    Bagdasarian also attempts to distinguish Hedging Concepts by stating that the contract involved

21    there was an unambiguous contract. However, because the Hedging Concepts court makes no

22    mention regarding the ambiguity of the contract at issue, such a distinction does not appear

23    pertinent to its findings.

24       As aptly stated by the Hedging Concepts court: "Clearly, each side here placed a

25    different interpretation on the contract, hence all parties did not make the same mistake." Id. at

26    1421. Indeed, in the proposed SAC, Bagdasarian alleges "[d]ue to this mutual misunderstanding

27    of Paragraph 12 of the Producer Agreement, the Producer Agreement should be rescinded . . . ."

28    (SAC ¶85.) Any alleged "misunderstanding" by the parties does not equate to a mistake as that

1  legal term is used. The Referee finds that such a claim for rescission cannot be properly plead

2  and therefore is futile. Leave to amend to add this claim is not warranted.[5]

3

4               Leave to Amend to Add Claim for Unjust Enrichment Is Not Warranted

5          In the proposed SAC, Bagdasarian seeks to add a claim for unjust enrichment based on its

6  new contract claims. Fox contends that the proposed unjust enrichment claim is futile, like the

7  two prior unjust enrichment claims dismissed by the Referee, because the Producer Agreement

8  governs the parties' rights and obligations. According to Bagdasarian, it seeks unjust enrichment

9  along with rescission as an alternative to its damages claims, and in the event the Agreement is

10 rescinded, Bagdasarian alleges that Fox has been unjustly enriched. However, as explained

11 above, the rescission claim is futile, and leave to add that claim is not granted. Therefore, the

12 Referee finds that the unjust enrichment claim is also futile, and leave to amend to add this claim

13 is not warranted.

14

15                                        Conclusion

16         Based on the foregoing, the Referee grants in part and denies in part Plaintiff Bagdasarian

17 Productions, LLC's Motion for Leave to Amend the First Amended Complaint as follows:

18   •  **Grants** with respect to the breach of contract claim based on soundtrack royalties for The

19      Squeakquel;

20   •  **Denies** with respect to the implied covenant of good faith and fair dealing contained in

21      the breach of contract claim;

22   •  **Grants** with respect to the breach of contract claim based on the licensing to HBO;

23   •  **Denies** with respect to the rescission claim; and

24   •  **Denies** with respect to the unjust enrichment claim.

25         Plaintiffs shall file and serve the Second Amended Complaint consistent with this Order

26 no later than September 23, 2013.

27

28

---

[5] The Referee notes that Fox raises additional arguments regarding the futility of the proposed rescission
claim, but it is not necessary to address these further arguments in light of the finding herein.

1    In addition, the Referee notes that in Footnote 1 of their Motion for Leave to Amend,
2    Plaintiffs propose to drop certain claims in the FAC "in an effort to streamline this case." The
3    Referee shall treat this as a request by Plaintiff pursuant to Fed. R. Civ. Proc. 41 and grants
4    Plaintiffs' request to dismiss the claims set forth in Footnote 1.

5

6    **DEFENDANT TWENTIETH CENTURY FOX'S MOTION FOR PARTIAL**
7    **SUMMARY JUDGMENT/SUMMARY ADJUDICATION**

8

9    Pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, Fox seeks an order granting
10   partial summary judgment and/or summary adjudication on BPL's "Purchase Price" Claim in
11   Count VII of Plaintiffs' First Amended Complaint.[6]
12   To prevail on a motion for summary judgment or partial summary judgment, a moving
13   party must:  (a) meet its *burden of production* by either producing evidence negating an essential
14   element of the non-moving party's claim or showing that the non-moving party does not have
15   sufficient evidence to succeed at trial; (b) meet its *burden of persuasion* by convincing the court
16   that there is no genuine issue of material fact; and (c) demonstrate that it is thus entitled to
17   judgment as a matter of law.  In considering whether summary judgment is appropriate, the
18   Referee must view the evidence "in the light most favorable" to the non-moving party.[7]
19   A moving party may not require a non-moving party to produce evidence supporting its claim or
20   defense simply by saying that the non-moving party has no such evidence.[8]  Even if the moving

21

22   [6] Fox moved for partial summary judgment on BPL's "Purchase Price" and "FX" Claims in Count VII of
23   Plaintiffs' First Amended Complaint.  This Order addresses the "Purchase Price" only, as BPL is "no
     longer pursuing" the "FX" claim.  *See* footnote 1 at page 1, Plaintiffs Bagdasarian Productions, LLC and
24   Janice Karman's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary
     Judgment dated July 30, 2013 (Opposition Brief).
25

26   [7]*Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000); *Thorns v.*
27       *Sundance Properties*, 726 F.2d 1417, 1418 (9th Cir. 1984).

28   [8]*Nissan Fire & Marine Ins. Co. v. Fritz Companies*, at 1105.

11

35

party can meet the *burden of production,* to prevail on summary judgment, it must **also** meet the *burden of persuasion*—by persuading the court that there is no genuine issue of material fact.[9] Further, where two parties specifically declare contradictory material facts, there is a genuine issue for trial and summary judgment must be denied.[10]

Evidentiary Objections

Fox has lodged objections to the evidence offered by Bagdasarian and Karmen. The Referee makes the following rulings on the evidentiary objections:

1. Fox Objections to Declaration of Ross Bagdasarian, Jr.-Overruled, except to the extent it offers hearsay statements attributable to Steve Waterman.
2. Fox Objections to the Declaration of Frederick I. Bernstein-Overruled. The Plum declaration places at issue factual matters relating to custom and practice in the industry, i.e., the "Marvel" sequel contract, as well as the issue of the interpretation of the word "advance" as a term of art or a term with an accepted meaning in the industry.

Ruling on Motion

Motion is denied. The "Purchase Price" claim is not subject to summary adjudication because there are questions of fact relating to the interpretation of the parties Agreement. Where the parties proffer conflicting interpretations of an agreement, both of which may be found to be reasonable, the court may entertain extrinsic evidence to assist in both interpreting the agreement and in determining the intent of the parties. As to the "FX" Claim, the Referee will defer a

---

[9]*Nissan Fire & Marine Ins. Co. v. Fritz Companies*, at 1106.

[10]*Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) "[W]here the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the motion must be denied."

12

36